## JONES v. CITY OF FORT WORTH.
### (No. 455–3968.)

(Commission of Appeals of Texas, Section B.
Dec. 20, 1924.)

**1. Municipal corporations ⬤➡812(6)—Substantial compliance with requirement for notice of accident sufficient.**

Where ordinance prescribes no particular manner of serving notice of damage or injury claims, any manner or method of service that affords city its substantial rights is sufficient.

**2. Municipal corporations ⬤➡812(9)—Written notice of accident to member of board of commissioners sufficient service on board.**

Under city charter, requiring notice of damage or injury claims to be served on board of commissioners, written notice served on commissioner of streets, a member of the board, was sufficient, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1073, relating to organization of board of commissioners in any municipality adopting commission form of government.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by Mrs. J. H. Jones against the City of Fort Worth. Judgment for plaintiff was reversed by the Court of Civil Appeals (249 S. W. 296), and judgment there rendered, to review which plaintiff brings error. Judgment of Court of Civil Appeals reversed, and judgment of trial court affirmed.

Geo. W. Kent, Walter D. Nicholson, and Theodore Mack, all of Fort Worth, for plaintiff in error.

R. Rouer, Gillis Johnson, and Raymond Buck, all of Fort Worth, for defendant in error.

HAMILTON, J. Plaintiff in error sued the city of Fort Worth for damages for personal injuries sustained by her by reason of her stepping into a hole or crack in the sidewalk. The case was tried before a jury on special issues. Judgment for $2,150 was rendered in her favor. The city appealed. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for the city. 249 S. W. 296.

The judgment of the Court of Civil Appeals is grounded upon its holding that Mrs. Jones failed to comply with the condition prescribed by the charter of the city of Fort Worth precedent to its liability for any damage or injury to persons or property.

The provision of the charter as to notice, section 4, chapter 11, is as follows:

"The city of Forth Worth shall not be held to liability for and on account of any damages or injury of any kind whatsoever to persons or property unless the person claiming same, his agent or attorney, shall, within thirty days after such injury or damage has been sustained, serve notice in writing upon the board of commissioners, giving the day and date, the time and place where such injury or damage occurred, and the nature and character of the injury."

All that Mrs. Jones or her attorneys did toward complying with the quoted charter provision was the writing and mailing by her attorneys of the following letter:

"December 16, 1920.

"Commissioner of Streets, City Hall, Fort Worth—Dear Sir: Under date of December 11th or thereabouts, Mrs. J. H. Jones, a widow, very poor, and practically penniless, with five small children, the eldest 16 years of age, was injured very severely and painfully by putting her foot in a large broken, place in the cement sidewalk in front of Piggly Wiggly store on Houston, between Eighth and Ninth. She is now under care of a physician, with her ankle and leg in swollen and inflamed condition.

"She has employed us to present her claim to the city, and has assigned to us an interest therein. Will you please be good enough to advise us as early as possible what is the policy of the city towards such unfortunate occurrences as this, and if we may expect a settlement for Mrs. Jones without having to resort to the courts?

"Thanking you, and with best wishes, we are,
"Cordially yours,     Nicholson & Kent,
                      "By [Signed] Kent."

Defendant in error objected to the introduction of this letter on the ground that it did not constitute notice to the city of Fort Worth as provided by the charter. The Court of Civil Appeals said:

"We conclude that notice to the commissioner of streets was not notice to the city commissioners as provided by the quoted section from the charter."

The ordinance does not require "notice to the city commissioners." It requires that "the person claiming, * * * his agent or attorney, shall * * * serve notice in writing upon the *board* of commissioners." (Italics ours.)

Article 1073, Vernon's Sayles' Ann. Civil Statutes 1914, provides that "the mayor and commissioners herein provided for shall constitute the 'board of commissioners'" of any city, town, or village adopting the commission form of government. The charter of the city of Fort Worth provides that "said board of commissioners so constituted shall have control and supervision over all the departments of said city, and to that end shall have the power to make and enforce such rules and regulations as they may see fit and proper for and concerning the organization, management, and operation of all the departments of said city and whatever agencies may be created for the administration of its affairs." Each commissioner under the commission form of government is elected by the voters

of the whole city and not by those of a division of the city as under the aldermanic system of city government. Each represents the whole city, and acts in behalf of the whole city and not as the representative of a part of the city as under the old form of city government. The members are on a parity of power and authority except the mayor, save in those capacities to which they are assigned and authorized by the mayor under the charter to perform specific duties and to have therein special power and authority. In the performance of these separate, designated, and authorized duties each is charged with a special responsibility as an accompaniment of such special power. In deed, one of the main inducements leading to the origin and creation of the commission form of government was to impose specific duties on definite persons as members of the board, and to fix upon a definite person responsibility for the performance of definite functions of the city government. The divided and indefinite responsibilities and duties of the members of the city council under the aldermanic form of government and the inability of the people definitely to fix upon a definite person responsibilities for the performance of definite functions was one of the largest considerations leading to the provision for the substitution of the commission form of government instead of the old.

In the exercise of these special powers, however, each commissioner represents the board. He is the board in the discharge of the duties and in the exercise of the powers belonging to his department. He is not only the agent of the board in the exercise of the functions of the department delegated to him, but he is an agent with full power of the board. Section 16, supra, further provides that—

"The mayor shall designate from among the commissioners, at the first meeting of the board after their election and qualification, at each election, or as soon thereafter as may be practicable, * * * one commissioner to be known as 'commissioner of streets and public property,' who shall be the executive officer of his department, and who shall have under his special charge the supervision of the streets, alleys, public grounds, and property of said city except as hereinafter limited by powers conferred on the park commission. * * * "

Mr. Wiggins, who received the letter of notice dated December 16th, and replied thereto on December 21st, was the street commissioner of Fort Worth, exercising the power and discharging the duties provided in the above last quoted portion of the city charter. Section 1, chapter 4, of the Charter provides that "the board of commissioners shall have power to lay out, establish, open, alter widen, lower, extend, grade, narrow, care for, pave, supervise, maintain and improve streets, alleys, sidewalks, squares, parks, public plac-

es and bridges, shall have the exclusive power and control over the same * * * and to require such street, alley, sidewalk or other public place to be repaired and restored." In the exercise of these powers by the board Mr. Wiggins was its agent, having "under his special charge the supervision" of the same. He was the arm of the board in the exercise of these powers. He stood nearer to the defect in the sidewalk acknowledged by the claim agent to exist than any other member of the board. It was his duty to have had it "repaired and restored" if the board should. He was more directly interested in protecting the city from loss by reason of such claims as this case exhibits than any other member of the board. If the claim was valid, it reflected on him, if on any member of the board. If the claim was not valid, he was interested in exposing its invalidity because thereby he saved the city the loss and his reputation, the detraction, if any. He, of all the members of the board, was most directly interested in keeping the sidewalks in repair and the city from invalid claims for injuries therefrom. Was service of the notice on Wiggins service on the board of commissioners? We think it was. The statute provides that "the mayor and the commissioners herein provided for shall constitute the 'board of commissioners'" of the city, town, or village adopting the commission form of government. The charter, as shown above, provides that the governing body of the city of Fort Worth shall consist of a "board of commissioners. * * * Such body shall consist of a mayor and five commissioners." The "board of commissioners" is an entity separate and apart from the individual members that compose it. By the terms of the statute all the commissioners and the mayor are amalgamated into one body called the board of commissioners, which is different from any one member thereof but is composed of all the members. Each commissioner is a part of the board, but no commissioner is the whole board. It merely embraces him as one of its parts. The board is the entity. The commissioners and the mayor are its components.

[1, 2] By the statute the mayor and the commissioners are welded together into a board of commissioners—a whole—of which each commissioner is a part but of which no one commissioner is the whole. The statute makes a composite creature of all the commissioners and the mayor—the board—differing from each of them but of which each of them is a part. No one of these composite parts is any more nearly the whole board in legal contemplation than any other part. The board of commissioners is an organism of which each organ is exactly alike, and each of which may perform the function of any other except the mayor. The mayor determines the functions that each performs. In this deter-

mination he is unrestricted under the charter of Fort Worth. In any given case where he has assigned a given function of the board to a member he might have assigned that function to another had he so desired. The nature of the board being such, it has as many avenues of approach as it has parts or members. The board is touched by touching any member. It is no more touched by touching every member than by touching one member. Touching every member is merely a repetition of touching one member. It is touched just as efficiently by touching one member as by touching all members. Notice to one member is notice to the board. The board is one whole. Notice cannot be given to a part of that whole without notice being given to the whole. Notice to several of its parts is no more effective as notice to the whole than notice to one part. The ordinance prescribes that "the person claiming, * * * his agent, or attorney shall * * * serve notice in writing upon the board of commissioners." It does not prescribe that it shall·be served upon the board of commissioners while in a meeting or in session. The board of commissioners is in existence at all times after qualification of the mayor and commissioners, whether in session or not. They constitute the board at all times. The ordinance does not prescribe that such notice shall be served upon every member of the board. Where the manner of service is prescribed in an ordinance of this class, it is doubtless the rule that it must be served in such manner. Dorsey v. Racine, 60 Wis. 292, 18 N. W. 928; Frankel v. New York (Sup.) 2 N. Y. S. 294; Denver v. Saulcey, 5 Colo. App. 420, 38 P. 1098. But, where no manner of service is provided, a substantial compliance with the ordinance is all that is required. Where no manner or method of service of such notice is prescribed, any method of service that affords the city its substantial rights in the matter of such service ought to be, and is, sufficient.

In the case of Peterson v. Village of Cokato, 84 Minn. 205, 87 N. W. 615, it was contended that the notice and claim for damages was not shown to have been properly served, and also that the court erred in excluding evidence offered by the defendant to the effect that the notice claimed to have been served was never presented to or acted upon by the village council. The Laws of Minnesota 1897, c. 248, § 1, prescribed that—

"Before any city, village or borough in this state shall be liable to any person for damages for, or on account of, any injury or loss alleged to have been received or suffered by reason of any defect in any bridge, * * * sidewalk * * * the person so alleged to be injured, or some one in his behalf, shall give to the city or village council, or, trustees or other governing body or such city, village or borough, within thirty days after the alleged injury, notice thereof; and shall present his

or their claim to compensation to such council or governing body in writing" etc.

In answer to the contentions above noted concerning the statute just quoted the court said:

·"There is nothing in either contention. There is no dispute but that a claim for damages in proper form, addressed to the common council, was served upon the recorder of the village prior to the commencement of this action, and that a service upon that officer is a sufficient compliance with the statute. * * * It is not important, in so far as plaintiff's right of action is concerned, whether the notice or claim for damages was delivered by the recorder to the village council, or acted upon by that body, or not. A proper service upon the recorder was all the law required, and the failure of the, recorder to present the notice or claim to the council in no way affected plaintiff's right of recovery. She was not required to follow up the recorder and see that he presented it·to the council."

In McIntee v. Middletown, 80 App. Div. 434, 81 N. Y. S. 124, the notice was served upon the president of the common council. The charter of the city of Middletown provided that—

" 'All claims for injury to the person or property alleged to have been caused or sustained by reason of defects in, want of repair,. or obstruction of any of the highways, streets, alleys, sidewalks or crosswalks or public places of the city, shall be presented in writing to the common council within sixty days after the date of such alleged injury.' "

In that case the Appellate Division of the Supreme Court of New York said:

"This notice was served upon the president of the common council, which is a sufficient service, * * * and,·we have no doubt that the plaintiff has established a right to recover even under the statute as amended. The plain object of statutes of this character is to provide means by which a city may better guard against the imposition of unfounded claims by being at once informed of their existence, so that the officers may the more readily pursue an investigation of their merits than if longer postponed. It could not have been the purpose of the Legislature to deny to the party injured by the negligence of a city any remedy against it, nor to unnecessarily embarrass parties in the enforcement of their rights, and the tendency of the decisions is to hold that a substantial compliance is all that is necessary in cases of this char-' acter."

The facts concerning the question of service upon Commissioner ·Wiggins not being controverted, but admitted by the defendant in error, we hold that they are a compliance with the provisions of the charter as a matter of law.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of.the trial court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.