CAMPBELL, Appellant, *v.* CITY OF HELENA, Respondent.

(No. 6,975.)

(Submitted June 14, 1932.   Decided July 20, 1932.)

[16 Pac. (2d) 1.]

*Mr. E. G. Toomey* and *Mr. R. Lee Word,* for Appellant, submitted an original and a reply brief and argued the cause orally.

372

*Mr. Raymond T. Nagle,* City Attorney, *Messrs. Gunn, Rasch, Hall & Gunn* and *Mr. Wm. B. Jones,* for Respondent, submitted an original and a supplemental brief; *Mr. Nagle* and *Mr. E. M. Hall* argued the cause orally.

Opinion: PER CURIAM.

The plaintiff, Edwin J. Campbell, brought action to recover damages suffered as the result of drinking contaminated water furnished by the city of Helena, and from which he contracted typhoid fever.

His complaint alleges that the city owns, maintains, operates and controls a water supply and system in its corporate capacity from which it furnishes water for drinking and domestic purposes on a rental basis, and so furnished water to the place where this plaintiff resides during the period covered by the allegations. It is then alleged that, in the summer of 1929, through the negligence of the defendant, its officers, agents and employees, the water became contaminated and that for a period of at least four weeks prior to the time when plaintiff became infected, the defendant had knowledge that the water it was furnishing him was germ-laden and unfit for human consumption, yet negligently failed to remedy the situation or warn plaintiff not to drink the water; that he did drink of the water at his place of residence on the thirteenth day of September, 1929, and thereby contracted typhoid fever from which he was seriously ill and confined to a hospital for a period of three weeks, to his damage in the sum of $10,000.

The defendant moved to strike certain portions of the complaint, which motion was overruled, and then answered, admitting that it owned and operated the water system but denying that it did so in its corporate capacity, and denying that it has control over the water supply. It further denied that it had any notice or knowledge that the water was contaminated prior to September 16, 1929. The answer set up two special defenses, the first being that the duty to determine the condition of the water was transferred by statute to the State Board of Health and its subordinates, the county and city health officers who had knowledge of the condition for some time prior to September 13, but failed to notify the city, and, second, that the plaintiff was not entitled to maintain his action by reason of the fact that he had not given written notice of his injury to the city as required by law.

The plaintiff moved to strike the special defenses from the answer, which motion was denied, and then demurred to the answer; the demurrer was overruled and plaintiff given ten days in which to further plead; he refused to plead further

and thereupon defendant moved for judgment on the pleadings on the ground that each special defense constituted a complete defense to the cause of action pleaded. This motion was sustained and judgment of dismissal entered. The plaintiff has appealed from the judgment.

Three questions are presented for determination. First, in operating a municipally owned water supply and system, does the city act in its governmental or in its proprietary capacity? Second: Do the laws creating a State Board of Health and subordinate county and city health departments take the control of water systems out of the hands of the city so as to relieve it of the duty of maintaining a pure supply of water? Third: Does the law require one injured in the manner plaintiff alleges he was injured to give notice to the city as a condition precedent to the maintenance of an action for damages?

1. A city is not required to furnish water to its inhabitants, but it is authorized to do so, if a majority of the taxpayers "affected thereby," on submission, shall authorize the city to enter upon this commercial enterprise. (Subd. 64, sec. 5039, Rev. Codes 1921.) For many years the city of Helena has owned and controlled its waterworks and, as far back as 1897 this court intimated that in the ownership and control of that water system the city acts in its proprietary character, as distinguished from its governmental capacity. (*Helena Consolidated Water Co.* v. *Steele,* 20 Mont. 1, 37 L. R. A. 412, 49 Pac. 382.) In 1915, this court declared: "The powers granted to a municipality are to be distinguished into two classes—the first including those which are legislative, public or governmental, and import sovereignty; the second those which are proprietary or *quasi* private, conferred for the private advantage of the inhabitants and of the city itself as a legal person," and "when a city is engaged in operating a municipal plant under authority granted by the general law, it acts in a proprietary or business capacity. In this behalf it stands upon the same footing as a private individual or business corporation similarly situated." (*Milligan* v. *City of Miles City,* 51 Mont. 374, L. R. A. 1916C, 395,

153 Pac. 276.) This distinction is reiterated and the foregoing decisions are cited with approval in *Public Service Commission v. City of Helena*, 52 Mont. 527, 159 Pac. 24, and we now have no inclination to depart from a principle so long and firmly established.

2. The defendant may be said to admit the correctness ▮▮▮ of the foregoing statement of the law, but it contends that in the protection of the public health the city acts in its governmental capacity, which governmental function is, by law, imposed upon the State Board of Health and its subordinates, the county and city health officers.

A careful reading of the statutory provisions respecting the powers and duties of the State Board of Health (secs. 2641–2657, Rev. Codes 1921), and of their subordinates, the county and city health officers (secs. 2444–2502, Id.), discloses that, for the protection of the public health, these officials are given "general oversight and care" of the *sources* of all water supplies for domestic use and of the installation of water systems and sewer systems as affecting such supplies, and are commanded to consult with and advise the city authorities in such matters. It has supervisory control over the subordinate health officials and may promulgate rules and regulations, and the health officers are authorized to investigate, on complaint, alleged nuisances tending to pollute water supply *sources* and prohibit the continuance thereof.

This board has general supervision over the "interests and health of the citizens of the state" and may appoint local health officers if the local authorities fail to do so. The local health officer is authorized to make sanitary inspection whenever and wherever he has reason to suspect that anything exists that may be detrimental to the public health, and, under rules promulgated by the state board, he shall investigate "suspicion" of the existence of such a condition, and shall investigate premises on which cases of typhoid fever exist and take necessary steps to prevent spread of disease and prevent the use of water which may be a probable source

of infection, and abate nuisances affecting water used for human consumption.

But all of the powers, duties and authority vested in these officers pertain with the same force when a water system is owned, controlled and operated by a private person or corporation as when it is municipally owned, controlled and operated.

If, then, the reposing of power in the health officers to protect the public health in the manner designated relieves a city of liability for negligently and knowingly furnishing polluted water to its customers, all private enterprises performing a like service are likewise relieved. This cannot be. The .city furnishes water to its inhabitants in its private corporate capacity, and it stands exactly in the shoes of the old Helena Water Company from which it purchased the plant; its activity in supplying water for domestic purposes, for hire, carries with it the duty to exercise care, commensurate with the risk involved, to see that the water which it supplies is free from filth and germs which will affect the health of its customers, just as is a private operator of a water system.

To say that a city is required to supply an adequate amount of water but is not concerned with the quality of that water because the quality has to do with the public health, would be a refinement of technical hair-splitting. To say that the health officers have been negligent is no defense to the charge that the city knowingly delivered polluted water to a customer; if the attempt was to hold the city liable in a manner wherein it was *obeying* a mandate of the health officers, a different question would be presented.

Even where it is held that, as the statutes give to the health officers supervisory control, the city is not required to "watch over the quality of the water as affected by the natural sources of supply," the city "is bound to keep its sewers and streets in such condition that the waters will not be polluted." (*Danaher* v. *City of Brooklyn*, 4 N. Y. Supp. 312.)

In *Griffith* v. *City of Butte*, 72 Mont. 552, 234 Pac. 829, this court quoted from *Denver* v. *Maurer*, 47 Colo. 209, 135 Am. St. Rep. 210, 106 Pac. 875, as follows: "When the city, acting in its private corporate character, by means of that sewer, created on its streets a condition that menaced the health and comfort of the community, no authorities need be cited to show that it was its private corporate duty to remove the condition from its streets. It follows, therefore, that the flushing of that sewer, though done to preserve health and comfort, was not done primarily in the performance of the governmental duty pertaining to the preservation of health, but was done in discharge of the general duty of caring for the streets." So here, the protection of the water supplied from pollution within the corporate limits and the correction of a condition brought about by negligent care of a sewer main, was but a part of the corporate duty of the city. (6 McQuillin on Municipal Corporations, 900.)

3. Section 5080, Revised Codes 1921, declares a condition precedent to the right to maintain any action falling within its provisions. (*Tonn* v. *City of Helena*, 42 Mont. 127, 36 L. R. A. (n. s.) 1136, 111 Pac. 715.) This section was first enacted as Chapter 93, Laws of 1903, under the title "An Act relating to actions against cities and towns for damages to persons injured on streets and other public grounds by reason of the negligence of any city or town in Montana"; it was carried forward, without the title, as section 3289, Revised Codes 1907, and finally as section 5080, above.

The body of the Act, unchanged since 1903, reads: "Before any city or town in this state shall be liable for damages for, or on account of, any injury or loss alleged to have been received or suffered by reason of any defect in any bridge, street, road, sidewalk, culvert, park, public grounds, ferry-boat, or public works of any kind in said city or town, the person so alleged to be injured, or someone in his behalf, shall give to the city or town council, or trustee, or other governing body of such city or town, within sixty days after the alleged injury, notice thereof; said notice

shall contain the time when and the place where said injury is alleged to have occurred."

Counsel for the defendant earnestly contend that, as the pleadings disclose that no notice was given the city by this plaintiff, the judgment on the pleadings must be affirmed. They contend that certain language of the Act, viz.: "*Any* injury or loss \* \* \* received or suffered by reason of *any defect in* any \* \* \* public works of any kind," requires notice to be given in such a case as this. If the quoted language were all—if it were unaffected by the context of the Act—the argument might be advanced with much force. But it is not all. The closing requirement that the "notice shall contain the time when and the place where said injury \* \* \* occurred" indicates that the makers of the law had in mind only physical injuries resulting directly from an accident occurring by reason of a "defect" in or on a street, sidewalk or other public work. That this is sound is demonstrated, if demonstration can be said to be necessary, by resort to well-known principles of statutory construction.

In construing a statute the paramount rule is to give effect to the intention of its makers (59 C. J. 949), or, as declared by this court, "the intention of the legislature must control." (*McNair* v. *School District,* 87 Mont. 423, 69 A. L. R. 866, 288 Pac. 188), for "the intention of the legislature in enacting a law is the law itself." (*Edwards* v. *Morton,* 92 Tex. 152, 46 S. W. 792; *State* v. *Livingston Concrete Co.,* 34 Mont. 570, 9 Ann. Cas. 204, 87 Pac. 980.)

To ascertain the intention of the legislature, recourse must first be had to the language employed in, and the apparent purpose to be subserved by, the statute (*McNair* v. *School District,* above, and cases therein cited), but where the meaning of a statute is obscure, resort may be had to other canons of construction, including recourse to the title to the original Act. (*Sullivan* v. *City of Butte,* 65 Mont. 495, 211 Pac. 301; *McLaughlin* v. *Bardsen,* 50 Mont. 177, 145 Pac. 954.)

However, in the instant case it is asserted that, by the formal adoption of the Codes of 1921 (Chap. 54, Laws of 1925), the statute is entirely divorced from its title and we cannot now look to it for any purpose. With this contention we cannot agree. The Act of 1925, approving the Codes of 1921, may cure defects in connection with the title to the Act, constitute an informal method of amendment, or render constitutional an Act which, with its title considered, would be unconstitutional (*State ex rel. Urton* v. *American Bank & Trust Co.*, 75 Mont. 369, 243 Pac. 1093; *State ex rel. Rankin* v. *Yegen*, 79 Mont. 184, 255 Pac. 744; *Central of Georgia Ry. Co.* v. *State*, 104 Ga. 831, 42 L. R. A. 518, 31 S. E. 531), but, as "the intention of the legislature * * * is the law itself," in the absence of an amendment to the original Act, either by direct legislation, or incorporation of something additional by the codifier, the codification of the laws of the state can have no bearing upon the original intention of the maker of the law; that intention lives and controls, so long as the law remains unchanged, with all the vigor it had when the Act left the hands of its maker, and resort may always be had to the title, in a proper case, as an aid to the determination of that intention.

While the question has not heretofore been directly raised in this state, the rule just stated was followed in *Kelly* v. *City of Butte*, 44 Mont. 115, 119 Pac. 171. The defendant asserts that this case is not in point, as the decision discloses that the cause of action arose in 1905, or before the codification of 1907, and that therefore the court was called upon to consider the Act as it had existed since 1903. In this counsel are mistaken; the Act under consideration but declares a condition precedent to the maintenance of an action for damages for an injury, and, if time was controlling, the court would look to the time of the commencement of the action; the time of the injury would be immaterial.

Reference to the transcript in the *Kelly Case* discloses that the first pleading before the court was an amended complaint filed in October, 1909, or more than two years after the codifi-

cation of 1907. It can hardly be presumed that the action was commenced nearly three years prior to the filing of this amended complaint, but, be that as it may, the court in 1911, without regard to the time when the injury was received or the action commenced, looked to the title of the Act to determine the intention of the legislature in its enactment, and, on its consideration, overruled the decision in *Butte Machinery Co.* v. *City of Butte*, 43 Mont. 351, 116 Pac. 357, on the ground that the title had been "overlooked" in deciding that case. In the *Butte Machinery Case*, the cause of action *arose* in 1909, and, if counsel for the defendant here were right, that decision was sound and should not have been overruled.

If we consider the title to the Act of 1903 (now sec. 5080), there can be no question but that the legislative assembly of that year had no intention to make it applicable to such a case as this, for that body explicitly declared that it relates to an "action for damages to persons *injured on* streets or other public grounds."

The plaintiff was not injured in or on any street or public grounds; if he can be said to have been "injured" in the sense in which the term is here used, he was injured by drinking polluted water in his home.

In construing a statute the court must give effect to every word, phrase, clause or sentence therein, if it is possible to do so. (*Stange* v. *Esval*, 67 Mont. 301, 215 Pac. 807; *State ex rel. Thacher* v. *Boyle*, 62 Mont. 97, 204 Pac. 378.) With this rule in mind, the statute before us, read in the light of its title, precludes the idea that its maker intended that notice should be given in such a case as this; the wording of the statute, in its entirety, clearly indicates the intention that the Act relates to actions based upon personal injury received by reason of an accident caused by a defect in a street or other "public place" or "works" to which the general public had the right of access and, consequently, which the city was in duty bound to use reasonable care to keep in a reasonably safe condition of repair for the protection of

those who rightfully traveled the way or went upon the grounds.

The specific requirement that the notice give the time when and the place where the accident occurred, is for the purpose of enabling the city, or its representatives, to examine the place where the defect is alleged to exist and to investigate the question of its liability, if any. (*Tonn* v. *City of Helena,* above; *Eby* v. *City of Lewistown,* 55 Mont. 113, 173 Pac. 1163.)

The construction placed upon dissimilar statutes by other courts is of no value here.

Counsel for defendant place great reliance upon the decision of the supreme court of Minnesota in *Winters* v. *City of Duluth,* 82 Minn. 127, 84 N. W. 788, wherein it is held that, under an Act which contains provisions similar to ours, together with others not included in section 5080, notice was required before an employee of the city was entitled to maintain an action for damages for injuries received when he stumbled upon an obstruction or projection in the floor of the pumping station of the city's water system. This result was reached by adopting the Century Dictionary's definition of the term "public works" as including "waterworks" and deducing the legislative intent from the wording of the Act itself. The Act construed was broader than is ours, in that it provided for notices of injuries "by reason of any alleged negligence of any officer, agent, servant or employee of said city." This additional provision of the Act may indicate an intention on the part of the legislature that notice must be given the city of the cause of injury by reason of any action against the city, based upon its negligence. But while in the above decision, the court held this portion of the Act unconstitutional as not being embraced within the title, it may have been influenced thereby nevertheless in ascertaining the intention of the lawmakers. The court held that, because of the breadth of the Act, the rule of *ejusdem generis* did not apply, and that the words "public grounds" were intended "to be used therein in their general

and usual sense; that is, as including all grounds held, used, or controlled by the city &ast; &ast; &ast; for the use and enjoyment of the public.''

We fail to see wherein the Duluth decision is in point, even if we were to accept the court's wide latitude of interpretation of the statute, for, in the instant case, the ''place where'' the plaintiff was injured does not come within the definition of ''public grounds,'' and was not a ''place held, used, or controlled by the city &ast; &ast; &ast; for the use and enjoyment of the public'' so as to come within the reasoning of the *Duluth Case*. The plaintiff was not injured *on* any ''grounds held, used or controlled'' by the city, but was injured by the drinking, in his own home, of contaminated water supplied to him by the city.

As indicating that the intention of the Minnesota legislature was to require notice to the city in all personal injury cases, that body later, by re-enactment, restored to the Act the portion stricken by the court, under the simple title: ''An Act requiring a notice of claim for damages, to be given to cities &ast; &ast; &ast; for loss or injury sustained in certain causes.'' (Chap. 381, Laws of Minnesota, 1913.) Under this later Act, the Minnesota court has held that the required notice must be given in a case wherein the fact conditions were practically identical with those before us (*Frasch* v. *City of New Ulm*, 130 Minn. 41, L. R. A. 1915E, 749, 153 N. W. 121), but, strangely enough, holds that the statute does not require such notice as a condition precedent to the bringing of an action for damages by one who contracted typhoid fever as a result of sewage entering her cellar from a defective sewer-pipe. (*Hughes* v. *Village of Nashwauk*, 177 Minn. 547, 225 N. W. 898.)

If the Minnesota court in the *Duluth Case* determined the intention of the legislature without regard to that portion of the statute which it held unconstitutional, we cannot agree with it and think the dissenting opinion of Mr. Justice Collins correctly interprets the Act and states the law when he said: ''The Act, according to its title, relates simply

to 'persons injured on streets and other public grounds'; * * * the general words 'and other public grounds' immediately following the word 'streets,' under the well-settled rule of *ejusdem generis,* must be held to mean grounds of the same general kind as those mentioned, viz.: public highways and places where the general public have a right to go, and they cannot be held to mean anything different."

. Statutes requiring notice and of the general type of ours are held not to apply to actions arising from negligence in carrying on any private commercial enterprise, in the following well-reasoned cases: *Henry* v. *City of Lincoln,* 93 Neb. 331, 50 L. R. A. (n. s.) 174, 140 N. W. 664; *Cook* v. *City of Beatrice,* 114 Neb. 305, 207 N. W. 518; *Borski* v. *City of Wakefield,* 239 Mich. 656, 215 N. W. 19; *Brown* v. *Salt Lake City,* 33 Utah, 222, 126 Am. St. Rep. 828, 14 Ann. Cas. 1004, 14 L. R. A. (n. s.) 619, 93 Pac. 570.

Section 5080 is not applicable to the facts before us; ▮▮ the cause of action is based upon the negligence of the city in *knowingly* furnishing its customers polluted water. Proof of such negligence, proximately resulting in injury and damage, would entitle the plaintiff to a judgment; consequently, the plaintiff cannot be required to prove the source of the contamination, much less give notice to the city as to the "place where" the contamination entered the water main because of a "defect" therein.

4. The defendant moved to strike paragraphs seven to ▮▮▮ eleven of the complaint on the ground that they are repetitious, redundant and unnecessary. It is true that each of the paragraphs mentioned repeats former allegations to the effect that the city knew that the water was contaminated for a period of four weeks prior to September 13, 1929, and knowingly furnished such contaminated water to this plaintiff, but each of those paragraphs closes with a specific allegation of negligence, to-wit: paragraph seven alleges that the city failed to disclose to the plaintiff that the water furnished was dangerous to life and health; eight, that it failed to warn him against the use of the water; nine,

that the city failed to chlorinate the water; ten, that it failed to turn the contaminated water out of the city mains; eleven, that it failed to adopt any precautionary measures for the protection of its customers. These allegations may become important on a trial of the case, but the negligent omission alleged in paragraph eight can be proved under the allegation contained in paragraph seven, and those contained in paragraphs nine and ten can be proved under the allegations of paragraph eleven; hence, the motion should have been granted as to paragraphs eight, nine and ten. (*Flatt* v. *Norman*, 91 Mont. 543, 11 Pac. (2d) 798.)

5. From what is heretofore said, plaintiff's motion to strike the two affirmative defenses set up in the answer, to the effect that the city is relieved from responsibility by reason of the authority vested in the state and local health boards and officers, and that plaintiff is not entitled to maintain his action because of his failure to give the notice required by section 5080, above, should have been sustained.

In the event that the plaintiff's testimony is sufficient to put defendant upon its proof, evidence that defendant complied with the rules and regulations of the health officers, and evidence as to those rules and regulations, would be relevant under the general denials of the answer, as bearing directly upon the question of defendant's negligence and its knowledge respecting the condition of the water.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

HONORABLE W. H. MEIGS, District Judge, sitting in place of MR. JUSTICE GALEN, disqualified, dissenting:

The view I take of this case compels me to dissent. Called to sit herein in the stead of Mr. Justice Galen, one of the ablest jurists this state has produced, who himself dissents upon occasion, I would fain be in harmony with my brethren on the law of the case. To be so in this instance, however, would cause me to feel that I have failed in the conscientious discharge of the imperative duty resting upon me, not to re-

main silent—the easy way—but to set forth the reasons for the faith within me, even though I stand alone.

Plaintiff seeks to recover damages from the defendant, a municipal corporation, for injuries allegedly sustained in being made ill with typhoid fever on or about the thirteenth day of September, 1929, from the drinking of contaminated water knowingly furnished and delivered the plaintiff at his residence by the defendant through its waterworks system for compensation during the four successive weeks immediately preceding said date.

The defendant in its answer, among other things and as a second and further answer and defense, alleged that the contamination was caused by sewage escaping through a break and defect in a sewer and into the water system by reason of defects in the water-pipes near the break; and further that the plaintiff did not, within sixty days, or at all, after the time of his injury or loss, nor did anyone in his behalf, or at all, give to the city council any notice thereof.

The plaintiff moved to strike this second and further answer in its entirety, which being denied, interposed a general demurrer thereto, which being overruled, the plaintiff refused to plead further and judgment on the pleadings was thereupon entered. The demurrer admits the allegations of fact if well pleaded, which they are if the statute is applicable.

The statute relied upon by the defendant reads in full as follows: "Before any city or town in this state shall be liable for damages for, or on account of, any injury or loss alleged to have been received or suffered by reason of any defect in any bridge, street, road, sidewalk, culvert, park, public ground, ferry-boat, or public works of any kind in said city or town, the person so alleged to be injured, or someone in his behalf, shall give to the city or town council, or trustee, or other governing body of such city or town, within sixty days after the alleged injury, notice thereof; said notice to contain the time when and the place where said injury is alleged to have occurred." (Chap. 93, p. 165, Laws of 1903.)

The above statute, enacted by the Eighth Legislative Assembly in 1903, has never been amended, was carried into the Revised Codes of 1907 of Montana as section 3289, and as section 5080 into the Revised Codes of Montana of 1921.

In *Butte Machinery Co.* v. *City of Butte,* (May, 1911) 43 Mont. 351, 116 Pac. 357, this court inadvertently overlooked the title to the Act and held that it applied alike to injuries to person and to property. In *Kelly* v. *City of Butte,* (November, 1911), 44 Mont. 115, 119 Pac. 171, the error was pointed out and corrected. In reversing *Butte Machinery Co.* v. *City of Butte,* this court held that the Act applied to injuries to persons only and not to property. With this construction the Act has remained a part of the statute law of this state, without change or modification whatsoever, to the present time.

Counsel for appellant argue that the rule of *ejusdem generis* applies and controls the construction of the statute, section 5080, and in their brief say that the phrase "public works of any kind" is to take the meaning which it shares in common with preceding terms, that is, "places over which and on which the public may travel, or in which the public may gather, * * * a place of public travel or resort and not a subsurface water or sewer line." In doing so counsel had to carry in mind and give explanation to two preceding terms, namely, "park" and "public ground," and did so by the language used, "a place in which the public may gather or resort," in each of which water, living or subsurface, and sewer facilities as well, are necessary.

While the books contain a multitude of cases construing various statutes of a similar nature, requiring notice, the industry of counsel and research disclose apparently only one case, *Winters* v. *City of Duluth,* (1901) 82 Minn. 127, 84 N. W. 788, construing in effect an identical statute including identical title with the Montana statute. From the large number of times in which the case has been cited, both federal and state, it may be aptly called a leading case on the question determined. The language of the decision is so apropos to the argument made that extended quotation therefrom is warranted.

The case arose from injuries sustained by an employee stumbling upon an obstruction or projection in the floor of the pumping station connected with the waterworks system of the defendant city. No notice thereof was given the city council. The same contention was made there, as here, namely, "That the words 'other public grounds,' following the word 'streets,' in the title of the Act, must, under the rule of *ejusdem generis,* be held to mean grounds of the same general kind as those previously mentioned, and be limited to public highways and places where the general public have a right to be." Disposing of this contention, the court said: "If the words of the title 'streets and other public grounds' were the only ones used to designate the public places in the body of the Act, the rule of construction involved might be controlling as to the legislative intent. But 'canons of construction are not the masters of the courts, but merely their servants, to aid them in ascertaining the legislative intent.' * * * The rule that, where general words in a statute follow particular and specific words, the former must be limited to things of the same kind as those specifically mentioned, can be used only as an aid in ascertaining the legislative intent, and when that is apparent from the statute itself the rule has no application. (Suth. St. Constr., secs. 279, 280; *Willis* v. *Mabon,* 48 Minn. 140, 156, 31 Am. St. Rep. 626, 16 L. R. A. 281, 50 N. W. 1110.) Such is this case, as far as the title to the Act in question is concerned; for, when we turn to the body of the Act, it is perfectly obvious that the legislature did not intend to limit the words 'other public grounds' to public grounds of the same kind as streets. The legislative intent, as declared in section 1 of this Act, is clear and specific. The intention is to require a notice of the injury to be given, as a condition precedent to the liability of any city to any person for any injury received by reason of any defect in any bridge, street, road, sidewalk, park, public ground, ferry-boat, or public works of any kind in such city. It would be absurd as well as discourteous to impute to the legislature an intention to limit the meaning of general words

used in the title of the Act so as to defeat the expressed purpose of its enactment. * * *

"The statute expressly provides that, before any city shall be liable for any injury to any person by reason of any defect in any public ground or public works of any kind in the city, the notice required therein must be given. The words 'public works of any kind,' as used in the statute, are broad enough to, and do, cover the facts of this case; for all fixed works constructed for public use, as railways, docks, canals, waterworks, and roads, are included in the term 'public works.' (Cent. Dict. * * * )

"The term 'public grounds,' in its general and usual meaning, and in the sense in which it is used in the title to this statute, includes any public works in the city. * * * The necessity for notice to a municipality of an injury suffered by reason of a defect in any of its public works or grounds is just as essential for its protection as it would be in case the injury was caused by a defect in its streets, and to limit its operation to injuries caused by the condition of its public highways would defeat the manifest purpose of the Act, by an illiberal construction, contrary to the spirit of the constitutional limitation."

This court, Mr. Justice Smith writing the opinion, in *Kelly* v. *City of Butte,* supra, gave the term "public works" the same general and usual meaning, in saying: "Section 3289, Revised Codes [sec. 5080, R. C. M. 1921] providing that notice of claim for injuries must be given to a city or town before it shall be liable for damages, refers, in terms, to any 'defect' in any bridge, street, public works, etc."

The *per curiam* opinion in strictly construing the word "on" in the title of the Act renders nugatory the words "or public works of any kind in said city or town," in the body of the Act because, forsooth, the water was delivered the plaintiff "not in or on any public place, but in the place where he resided,—a private residence." Where else could it have been delivered under the circumstances pleaded? The implication is that if the plaintiff's residence had been "in or on any public

place'' the statute would apply. Here the primary causes of plaintiff's illness were, first, the break and defect in the sewer, and, second, the defect in the water-pipe permitting the contaminated sewage to enter and contaminate the water, which plaintiff drank, thereby causing his illness. As to this particular plaintiff, his illness and the character thereof, the particular part of the city in which he resided, and mayhap his very existence were not known by the city council, and did not know for more than two years from the date of the alleged illness when this suit was instituted. It was said in the argument that a typhoid epidemic existed in the city at about the time of plaintiff's illness, and of such nature as to give rise to the fear that the various sections and sources of the city's water system were all infected. Even now, in Helena, in Great Falls, or any other city of the state, some individual might claim he was made ill with some character of illness from the drinking of some character of deleterious water, delivered to him at his private residence by the city through its public works,—the water system. No epidemic therefrom existed. No notice thereof was ever given the city council, nor anything known of it for more than two years later when a suit to recover large damages was filed. Surely, the mere statement hereof shows the absolute necessity for the city council to be given notice. It is also the rule of law according to the authorities. The Act in question, section 5080, uses the words "public grounds." Rarely are such seen without observing thereon buildings, and correlatively there comes at once to the mind the thought of public works, public works of some or any kind, and which also must have been in the mind of the legislature.

In *State* v. *McKinney*, 29 Mont. 375, 1 Ann. Cas. 579, 74 Pac. 1095, Mr. Commissioner Clayberg writing the opinion, sets forth from the collected wisdom of the authorities five cardinal principles controlling the constitutional enactment of a statute. The fourth principle relative to the title is as follows: "The title is generally sufficient if the body of the Act treats only, directly or indirectly, of the subjects mentioned in the title,

and of other subjects germane thereto, or of matters in further-
ance of or necessary to accomplish the general objects of the
bill, as mentioned in the title. Details need not be mentioned.
The title need not contain a complete list of all matters covered
by the Act.'' This able jurist, quoting with approval from
*State ex rel. Olsen* v. *Board of Control*, 85 Minn. 165, in a quo-
tation too long to fully incorporate here, says: ''The supreme
court of Minnesota has so thoroughly discussed the principles
which must control a court in passing upon the constitution-
ality of a statute where objections are made to its title that we
feel constrained to quote at length from its decision: 'Every
reasonable presumption should be in favor of the title, which
should be more liberally construed than the body of the law,
giving to the general words in such title paramount weight. It
is not essential that the best or even an accurate title be em-
ployed, if it be suggestive in any sense of the legislative pur-
pose. The remedy to be secured, and mischief avoided, is the
best test of a sufficient title, which is to prevent it from being
made a cloak or artifice to distract attention from the substance
of the Act itself. The title, if objected to, should be aided, if
possible, by resort to the body of the Act, to show that it was
not intended by such title to mislead the legislature or the peo-
ple, nor to distract their attention from its distinctive measures.
Throughout all the decisions it will be found that it is a re-
gard for the law itself, rather than any puerile consideration
for the title, which is made the essential object of judicial
anxiety.' ''

In *Evers* v. *Hudson*, 36 Mont. 135, 92 Pac. 462, Mr. Justice
Holloway, a most able and learned jurist, in addition to the five
principles enunciated by Mr. Commissioner Clayberg in *State*
v. *McKinney*, sets forth four more, two of which, 7 and 8, may
be here quoted: ''7. If a title fairly indicates the general sub-
ject of the Act, is comprehensive enough in its scope reasonably
to cover all the provisions thereof, and is not calculated to mis-
lead either the legislature or the public, this is a sufficient com-
pliance with the constitutional requirement. 8. Generality or
comprehensiveness in the title is no objection, provided the

title is not misleading or deceptive and fairly directs the mind to the subject of the law in a way calculated to attract the attention truly to the matter which is proposed to be legislated upon.''

In *State* v. *Anaconda C. M. Co.*, 23 Mont. 498, 501, 59 Pac. 854, Mr. Justice Hunt, writing the opinion, said: ''Upon the highest authority it is held that, under constitutional provisions substantially like that referred to in Montana, where the degree of particularity necessary to be expressed in the title of a bill is not indicated by the Constitution itself, the courts ought not 'embarrass legislation by technical interpretations based upon mere form of phraseology. The objection should be grave, and the conflict between the statute and the Constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one object, or, if but one object, that it was not sufficiently expressed by its title.' (*Montclair* v. *Ramsdell*, 107 U. S. 147, 155, 2 Sup. Ct. 391, 27 L. Ed. 431; *Powell* v. *Supervisors of Brunswick County*, 88 Va. 707, 14 S. E. 543.)''

In 25 R. C. L. 1052, a rule of construction is there stated: ''One of the recognized rules of construction of statutes is that we are to look to the state of the law when the statute was enacted in order to see for what it was intended as a substitute. No single statute should be interpreted solely by its own words. Upon enactment it becomes a part of, and is to be read in connection with, the whole body of the law. Its interpretation is to be in the light of the general policy of previous legislation and of the long established principles of law and equity. Every statute which is properly the subject of judicial construction should receive such a construction as will not conflict with general principles and will make it harmonize with the pre-existing body of law.'' This rule was quoted with approval by Mr. Justice Galen in *State* v. *Bowker*, 63 Mont. 1, 5, 205 Pac. 961; again in *State ex rel. Ewald* v. *Certain Intoxicating Liquors*, 71 Mont. 79, 83, 227 Pac. 472; and cited as authority by Judge Bennett in *Fergus Motor Co.* v. *Sorenson*, 73 Mont. 122, 128, 235 Pac. 422.

"In construing a statute the court must, if possible, ascertain and carry into effect the intention of the legislature enacting it (*Power* v. *Board of Co. Commrs.*, 7 Mont. 82, 14 Pac. 658); and such intention is to be gathered from the terms of the statute, when considered in the light of the surrounding circumstances (*Jay* v. *School District No. 1*, 24 Mont. 219, 61 Pac. 250)"; (*State ex rel. Evans* v. *Stewart*, 53 Mont. 18, 31, 161 Pac. 309); "and the apparent purpose to be subserved. (*Johnson* v. *Butte & Superior Copper Co.*, 41 Mont. 158, 48 L. R. A. (n. s.) 938, 108 Pac. 1057.)" (*State ex rel. Carter* v. *Kall*, 53 Mont. 162, 168, 5 A. L. R. 1309, 162 Pac. 385; *Sullivan* v. *City of Butte*, 65 Mont. 495, 496, 211 Pac. 301; *Bennett* v. *Meeker*, 61 Mont. 307, 310, 202 Pac. 203; *Lerch* v. *Missoula Brick & Tile Co.*, 45 Mont. 314, 320, Ann. Cas. 1914A, 346, 123 Pac. 25.) "Every word, phrase, clause or sentence employed is to be considered and none shall be held meaningless if it is possible to give effect to it. (*Stadler* v. *City of Helena*, 46 Mont. 128, 127 Pac. 454.)" (*Mid-Northern Oil Co.* v. *Walker*, 65 Mont. 414, 428, 211 Pac. 353; *City of Billings* v. *Public Service Com.*, 67 Mont. 29, 38, 214 Pac. 608; *State ex rel. Board of Co. Commrs.* v. *District Court*, 62 Mont. 275, 279, 204 Pac. 600; sec. 10520, Rev. Codes 1921.)

At the time section 5080 was enacted there were then upon the statute books of this state sections 4811 and 4812, Political Code 1895. Section 4811 provided that "all accounts and demands against a city or town must be submitted to the council," etc. Section 4812 provided that "all accounts and demands against a city or town must be presented to the council, duly itemized and accompanied by an affidavit of the party or his agent, * * * within one year from the date the same accrued; and any claim or demand not so presented within the time aforesaid is forever barred." These sections were amended by additions thereto, but without changing the provisions above quoted, by Chapter 30, Laws of 1903, p. 42. These sections were carried forward into the Revised Codes of 1907 as sections 3282 and 3283, without showing the amendments, the amendments being given as sections 3287 and 3288,

Revised Codes 1907. Sections 3282 and 3283 were repealed by Chapter 109, Laws of 1921, p. 109.

In *Dawes* v. *City of Great Falls,* 31 Mont. 9, 77 Pac. 309, the action was based upon the alleged negligence of the city in making a dangerous excavation in one of the streets, and negligently allowing such excavation to remain in a dangerous condition, with full knowledge of such condition, into which the plaintiff fell and was injured. A trial was had by the court with a jury, which resulted in a verdict and judgment in favor of the plaintiff for the sum of $1,000 damages. Motion for nonsuit was made by the city for the reason that the complaint did not state facts sufficient to constitute a cause of action in "that there is no allegation that the demand of plaintiff was ever presented to the city council, as required by the provisions of sections 4811 and 4812 of the Political Code." The trial court, the loved Judge J. B. Leslie presiding, denied the motion. His ruling was affirmed, the supreme court holding that such provisions could not apply to a claim for damages arising from a tort. Recall that section 4812 required the demand to be presented "within one year from the date the same accrued." Whensoever the injury occurred, it was over a year prior to the institution of suit, hence a stale injury. It is reasonable to suppose that one or more of the legislators from the Great Falls district were conversant with this case, hence the enactment of Chapter 93, Acts of 1903, now section 5080, Revised Codes 1921. "We are to look to the state of the law when the statute was enacted in order to see for what it was intended as a substitute." (25 R. C. L. 1052, quoted supra; see, also, *United States Cement Co.* v. *Cooper,* 172 Ind. 599, 88 N. E. 69, 72; *Commonwealth* v. *Chicago, St. L. & N. O. R. Co.,* 124 Ky. 497, 99 S. W. 596, 599; *State* v. *Western Union Tel. Co.,* 196 Ala. 570, 72 South. 99, 100.)

The *per curiam* opinion cites *Henry* v. *City of Lincoln,* 93 Neb. 331, 50 L. R. A. (n. s.) 174, 140 N. W. 664; *Cook* v. *City of Beatrice,* 114 Neb. 305, 207 N. W. 518, 519; *Borski* v. *City of Wakefield,* 239 Mich. 656, 215 N. W. 19; *Brown* v. *Salt Lake*

*City,* 33 Utah, 222, 126 Am. St. Rep. 828, 14 Ann. Cas. 1004, 14 L. R. A. (n. s.) 619, 95 Pac. 570, as authorities holding the giving of notice not necessary in a case arising out of the conduct of a purely private enterprise voluntarily entered into by a municipality for hire. The case of *D'Amico* v. *City of Boston,* 176 Mass. 599, 58 N. E. 158, is quite generally cited with *Henry* v. *City of Lincoln.* These two cases, said Mr. Justice Prentis, in *O'Neil* v. *City of Richmond,* 141 Va. 168, 126 S. E. 56, appear to stand alone, and that in *Henry* v. *City of Lincoln* there was a strong dissenting opinion. The case of *Cook* v. *City of Beatrice* simply follows *Henry* v. *City of Lincoln,* the early case in that jurisdiction. *Borski* v. *City of Wakefield* follows *Henry* v. *City of Lincoln,* cites *D'Amico* v. *City of Boston,* and says the cases in which the question has been considered are not numerous. For the contrary view the opinion cites *Dickie* v. *City of Centralia,* 91 Wash. 467, 157 Pac. 1084, and *Western Salt Co.* v. *City of San Diego,* 181 Cal. 696, 186 Pac. 345. In *Brown* v. *Salt Lake City,* the statute was confined exclusively to streets, and the Utah supreme court, in an opinion by the late and one of Utah's most able jurists, Mr. Justice Frick, page 373 of 95 Pac., said: "It will be observed the claims that require presentation are of two kinds: (1) Claims arising out of defective or obstructed streets, alleys, cross-walks, sidewalks, culverts or bridges, or for negligence of the city authorities with respect thereto; (2) claims consisting of various items of account or otherwise that may arise out of transactions with the city, and not arising in tort. This seems manifest from the language used with respect to the character of the claims that must be presented to the city council under the second class mentioned in the statute. It seems reasonably clear to us that, in view of the case of *Dawes* v. *City of Great Falls,* 31 Mont. 9, 77 Pac. 309, the claim in this case does not belong to the class last above noticed." Nor did it come within the first class because "a claim included within the statute is one pertaining to a personal injury or damage to property, and must be presented within ninety days after the happening of such injury or damage," further said the court.

Indeed, it may then be said that the practical necessity for the city, governed and managed in the interests of its inhabitants and taxpayers, the ultimate payors, to have notice of the claim, before suit, of any injury or loss alleged to have been sustained in the discharge of its corporate or business functions and duties, is the primary reason that induced the legislature to enact the statute in question. In the absence of statute a city, free from any active wrongdoing, is not liable in a private action for damages occurring while in the exercise or discharge of its purely municipal and governmental functions and duties. (6 McQuillin on Municipal Corporations, sec. 2793, and Id. 1932 Supp.; *City of Portsmouth* v. *Weiss*, (1926) 145 Va. 94, 133 S. E. 781, 785 et seq.; *Clinton* v. *City of Santa Cruz*, (1930) 104 Cal. App. 490, 285 Pac. 1062; *Hughes* v. *Village of Nashwauk*, (1929) 177 Minn. 547, 225 N. W. 898.)

The case of *Frasch* v. *City of New Ulm*, 130 Minn. 41, L. R. A. 1915E, 749, 153 N. W. 121, is clearly identical with the case here, and the language of the opinion is so clearly apropos to the notice requirement of section 5080, and contrary to the ruling in the *per curiam* opinion, that the lengthy quotation therefrom is warranted. It reads: "But it is said the provision with respect to written notice of claim should be confined to actions involving or pertaining to the public or governmental functions of a city, and not to causes arising out of the conduct of some private endeavor which it may choose to enter upon, such as the maintenance of waterworks or lighting systems. We have held municipal corporations to the same accountability for negligence in the conduct of enterprises other than strictly governmental that we exact from private corporations engaged in similar business. (*Wiltse* v. *City of Red Wing*, 99 Minn. 255, 109 N. W. 114; *Keever* v. *Mankato*, 113 Minn. 55, Ann. Cas. 1912A, 216, 33 L. R. A. (n. s.) 339, 343, 129 N. W. 158, 775, 1 N. C. C. A. 187; *Brantman* v. *City of Canby*, 119 Minn. 396, 43 L. R. A. (n. s.) 962, 138 N. W. 671.) And it may be conceded that, in respect to every injury resulting from a negligent operation of its system of waterworks, defendant is answerable in dam-

ages to the same extent as would be a private owner thereof. But, even so, the legislature is not, because of similarity of liability, precluded from making distinctions between municipalities and private corporations in respect to conditions precedent to suit. When those conditions are complied with, the liability and redress are the same. This is a period when municipalities are not confined strictly to the functions of governmental agencies, but are permitted to embark in a variety of enterprises deemed beneficial and convenient to its inhabitants, upon the ground that cheaper and more efficient service can be rendered by the municipality than by persons or private corporations. Under this head come the so-called public utilities. This very need of entrusting a multitude of private or quasi-private matters to municipalities, in addition to their purely public duties, is sufficient reason for the requirement of timely notice of a claim, before the one who has suffered from the negligence of the municipality may resort to the court for its enforcement. Every reason which calls for the service of a written notice of claim upon a municipality before suit in any case applies in this. It is as important that the head or administrative body of a city have notice of a claim for negligent injury or damage caused by something connected .with its water system as if the injury arose out of some negligent defect in its streets. The funds of a city must be used to pay the one claim, as well as the other. The purpose of notice is to enable a city to ascertain the facts and keep in touch with the evidence pertaining to the claim, so as to facilitate a just settlement, or, if that cannot be done, defend with effect. The legislature, having deemed it expedient to public welfare to permit municipalities to own and manage public utilities, may to a reasonable extent protect them against stale and long-hidden demands and perhaps unnecessary lawsuits, by requiring timely notice as a condition precedent to suit. We do not think this arbitrary class legislation. There can be no claim that thirty days' time is unreasonably short in cases like the present. *Tonn* v. *Helena*, 42 Mont. 127, 36 L. R. A. (n. s.) 1136, 111

Pac. 715, 3 N. C. C. A. 437, *Steltz* v. *Wausau*, 88 Wis. 618, 60 N. W. 1054, *McCue* v. *Waupun*, 96 Wis. 625, 71 N. W. 1054, and *O'Donnell* v. *New London*, 113 Wis. 292, 89 N. W. 511, go to sustain the proposition that, in respect to demands arising outside of the purely governmental functions of cities, or outside of statutory obligations imposed upon them, the legislature, in requiring service of notice of demand as a condition precedent to suit against them, is not improperly discriminating against individuals or private corporations owning and conducting like utilities." To the same effect are *Berry* v. *City of Helena*, (1919) 56 Mont. 122, 182 Pac. 117; *Dickie* v. *City of Centralia*, (1916) 91 Wash. 467, 157 Pac. 1084; *O'Neil* v. *City of Richmond*, (1925) 141 Va. 168, 126 S. E. 56; *Sheer* v. *City of Everett*, (1925) 134 Wash. 385, 235 Pac. 789; *Lee* v. *City of Ft. Morgan*, (1925) 77 Colo. 135, 235 Pac. 348, 350; *City of Portsmouth* v. *Weiss*, (1926) 145 Va. 94, 133 S. E. 781; *Western Salt Co.* v. *City of San Diego*, (1919) 181 Cal. 696, 186 Pac. 345; *Condon* v. *City of Chicago*, (1911) 249 Ill. 596, 94 N. E. 976; *Continental Ins. Co.* v. *City of Los Angeles*, (1928) 92 Cal. App. 585, 268 Pac. 920; *Beeson* v. *City of Los Angeles*, (1931) 115 Cal. App. 122, 300 Pac. 993; *Crescent Wharf & Warehouse Co.* v. *City of Los Angeles*, (1929) 207 Cal. 430, 278 Pac. 1028; *Dunn* v. *Boise City*, (1927) 45 Idaho, 362, 262 Pac. 507; *Mayor of Savannah* v. *Herndon*, (1932) 44 Ga. App. 574, 162 S. E. 398; *Szroka* v. *Northwestern Bell Tel. Co.*, (1927) 171 Minn. 57, 59 A. L. R. 404, 213 N. W. 557; *Kuhlmann* v. *City of Fergus Falls*, (1929) 178 Minn. 489, 227 N. W. 653.

*Hughes* v. *City of Nashwauk*, supra, is commented on in the *per curiam* opinion apparently with some degree of satisfaction to the effect that the supreme court of Minnesota has departed from its ruling in *Frasch* v. *City of New Ulm*, and that that state now is authority for the ruling in the instant opinion. The very contrary is the case. True, the Minnesota court reviews its former decisions, several of which are applicable here, and holds that notice before suit in their

instant case is not required. Why? *Hughes* v. *Village of Nashwauk* is one of the few cases in which a city or town was guilty of active wrongdoing. The case, said the court, "is not predicated on negligence, but on the creation and maintenance of a nuisance upon the premises occupied by the plaintiff." The court then holds: "The complaint in the present case alleges such an invasion of the plaintiff's premises and the creation of a nuisance thereon. In that situation it appears to be settled by our decisions above noted that an equitable action to enjoin the nuisance and recover damages therefor would not come within the statute requiring notice. It is clear also that under the decision in the *Barber Case* an action at law for damages to property would not come within the statute. If damages may be recovered in an action at law on account of a nuisance created and maintained by defendant on plaintiff's premises, there appears no valid reason for distinguishing between damages to property and damages to the person so far as the notice statute is concerned. That statute makes the cause of the damage, and not the kind of damage resulting, the test of whether notice is required. Such notice is required where the cause of the damage is a 'defect in any bridge, street, sidewalk, * * * public works or any grounds or places whatsoever, or by reason of the negligence of any of its officers, agents,' etc. Here the cause of damage is alleged to be a nuisance created and maintained by the defendant on private property."

In *Tonn* v. *City of Helena,* 42 Mont. 127, 36 L. R. A. (n. s.) 1136, 111 Pac. 715, cited in *Frasch* v. *City of New Ulm,* Mr. Justice Holloway, writing the opinion, said: "It is argued that section 3289 [sec. 5080, Rev. Codes 1921] is unconstitutional in that an unjust discrimination is made in favor of municipalities and against all others who may be defendants in personal injury actions; or, in other words, that, in case the notice provided for above is not given, the city is thus granted a special immunity. A statute is not open to objection merely because it is class legislation. If the classification is reasonable, and all members of a given class receive equal

protection, the statute will be upheld. This is the universal rule. (Citations omitted.) There would seem to be abundant reason for taking public municipal bodies out of the general class of litigants. Such bodies are governed only by public officers; the ramifications of their business interests are so extensive that it is a matter of common knowledge that they cannot ascertain the facts with reference to their liability with the same degree of exactness and dispatch as a private person or the officers or agents of a private corporation. We think it cannot be said that the classification made by this statute is unreasonable; and, since all cities of the state are treated alike, the statute is not open to the objection urged against it. (*Quong Wing* v. *Kirkendall*, 39 Mont. 64, 101 Pac. 250; *Lewis* v. *Northern Pac. Ry. Co.*, 36 Mont. 207, 92 Pac. 469; *Parker-Washington Co.* v. *Kansas City*, 73 Kan. 722, 85 Pac. 781.)''

The fact that a defect exists in any street, public grounds or public works of a city may be known by its mayor or other officer, or even that they had actual knowledge of a person's injury or loss, does not dispense with notice. A city under the statute is entitled to have notice, before suit, of the particular person claiming to have sustained injury or loss, ''to enable the city officials to investigate and to determine from such investigation whether the city shall settle the claim or defend against it, and, if the latter alternative is chosen, to secure evidence.'' (*Berry* v. *City of Helena*, supra.)

In *Thomann* v. *City of Rochester*, (1931) 256 N. Y. 165, 178 N. E. 129, Chief Justice Cardoza, now a Justice of the Supreme Court of the United States, writing the opinion, reversing Id. 230 App. Div. 612, 245 N. Y. Supp. 680, and affirming the trial court as to the statutory requirement for notice, said: ''The requirement is strict, but not so strict as to be arbitrary. A judgment against a municipal corporation must be paid out of the public purse. Raids by the unscrupulous will multiply apace if claims may be postponed till the injury is stale. The law does not condemn as arbitrary a

classification of rights and remedies that is thus rooted in the public needs."

The giving of the statutory notice is mandatory, hence it must be substantially complied with. (*Nagle* v. *City of Billings,* (1927) 80 Mont. 278, 260 Pac. 717; *Thomann* v. *City of Rochester,* supra; *Reid* v. *Kansas City,* (1917) 195 Mo. App. 457, 192 S. W. 1047; *Cawthon* v. *City of Houston,* (1919) (Tex. Civ. App.), 212 S. W. 796; Id., (1921) (Tex. Com. App.) 231 S. W. 701; *City of Ft. Worth* v. *Jones,* (1923) (Tex. Civ. App.) 249 S. W. 296; *Jones* v. *City of Ft. Worth,* (1924) (Tex. Com. App.) 267 S. W. 681; Id., (1925) 270 S. W. 1002; *Bowles* v. *City of Richmond,* (1925) 147 Va. 730, 129 S. E. 489; Id., 133 S. E. 593; *Dunn* v. *Boise City,* (1927) 45 Idaho, 362, 262 Pac. 507; *Hooge* v. *City of Milnor,* (1927) 56 N. D. 285, 217 N. W. 163; *City of Birmingham* v. *Simmons,* (1930) 222 Ala. 111, 74 A. L. R. 766, 130 South. 896; *Lane* v. *Gray,* (1930) 50 R. I. 486, 68 A. L. R. 1530, 149 Atl. 593; *Sheehy* v. *City of New York,* (1899) 160 N. Y. 139, 54 N. E. 749.)

The overwhelming weight of authority is clearly contrary to the conclusions reached in the *per curiam* opinion. Having in mind what is said herein relative to the management of municipal affairs, governmental and proprietary, reason, supported by almost universal authority, rebels against the adoption of any such ruling in Montana.

The failure of the plaintiff to give the mandatory notice within time, or at all, as required by the statute, is decisive of this case. The trial court was right in overruling the demurrer to defendant's answer and entering judgment on the pleadings dismissing the action.

I regret the inordinate length of this opinion, yet to make my position clear it could not be otherwise.

Rehearing denied November 16, 1932.