CASE 64.—ACTION BY THE COMMONWEALTH FOR THE
USE OF THE LOUISVILLE SCHOOL BOARD,
AGAINST THE CHICAGO, ST. LOUIS & NEW
ORLEANS R. R. CO., TO RECOVER CERTAIN REAL
ESTATE AS ESCHEATED PROPERTY.—January 30.·

# Commonwealth, for Use of Louisville School Board, v. Chicago, St. L. & N. O. R. R. Co.

Appeal from Jefferson Circuit Court; Chancery Branch (Second Division).

SAMUEL B. KIRBY, Judge.

From a judgment dismissing its petition plaintiff appeals. Reversed.

1. Escheat—Land Held by Corporations.—Ky. Const. sec. 192, provides that a corporation shall not hold any real estate except such as may be necessary for carrying on its legitimate business, for a longer period than five years, under penalty of escheat. Ky. Stats., 1903, section 567, contains the same provisions. Ky. Stats., 1903, section 2971, being a part of the laws relating to the government of cities of the first-class, provides that so much real personal, or mixed property in the city which, from alienage, defect of heirs, failure of kindred, or other causes, shall escheat to the commonwealth shall vest in the board for the benefit of the schools, and that the board may, in the name of the commonwealth, sue for and recover the same. Held, that the Legislature intended by the use of the words "other causes" in section 2971 to provide for the recovery of escheats by school boards happening upon events of a different class than those specially mentioned in the section, hence the board might sue to recover land escheated by a corporation under Const. Ky., section 192, and Ky. Stat. 1903, section 567.

2. Same—Grounds.—The state, in a just and proper exercise of its police power, may declare new causes of escheat of lands within its territory.

3. Statutes—Constitutional Law—Special Legislation.—Ky. Stats., 1903, sec. 2971, providing that the use of escheats in cities of the first class shall be for the public schools in such cities, and authorizing the school board to sue for the same, is not special legislation within the meaning of the constitutional inhibition, notwithstanding the state does not allow the same privilege to the school boards of other cities.

THOMAS H. PAYNTER, RANDOLPH H. BLAIN, D. W. SANDERS, W. RUMSEY KINNEY, PAUL F. SEMONIN, HARDIN H. HERR, attorneys for appellants.

POINTS AND AUTHORITIES.

(a) Under section 2971, Kentucky Statutes, the school board of cities of the first class can institute an action for the escheat of property for the cause mentioned in section 192 of the Constitution and section 567 of Kentucky Statutes. (Commonwealth v. Wis. Chair Co., 24 Ky. Law Rep., 170, S. C., 84, S. W., 535, distinguished; Commonwealth v. Farmer's Bank of Ky., 27 Ky. Law Rep., 153, S. C.; 84 S. W., 732, distinguished.)

(b) Under section 2971 of Kentucky Statutes, the school board can institute an action for the escheat of property for causes other than those mentioned in chap. 26 of the General Statutes and in Burnett's Code, page 674, section 45. The last named act is construed in Bank of Louisville v. Trustee, 83 Ky., 219.

(c) Section 192 of the Constitution and Sections 2567 and 2971 Kentucky Statutes, must be construed pari materia. (Am. & Eng Encyc. of Law, vol. 46. page 620.)

(d) Every word of a statute must be given effect. (Broom's Legal Maxims (8th Amer. Edition), page 589; Lewis Sutherland Statutory Construction, sections 491 and 516, pages 919 and 954.)

(e) Where a statute shows that a right may be enforced by filing a petition, the parties seeking to enforce the right are not left without a remedy, because the statute prescribes no mode of special procedure. Either the court can direct the manner and procedure of the action, or resort can be had to the common law. (Board of Park Commissioners v. DuPont, 110 Ky., 743; 16 Cyc., 533; Crawford v. Comm., 1 Watts, (Pa.) 480.)

(f) The words "other causes" in section 2971 of Kentucky Statutes are not governed by ejusdem generis. (Chap. 44, Ky. Statutes; Lewis Sutherland Statutory Construction, sections 436 and 437; Nat. Bank of Commerce, 161 Mo., 126, S. C., 61 S. W., 587; Rex v. Shrewsberry, 3 B. & A., 216; Willis v. Mahon, 140 S. C., 31 Am. St. Reports, 626; Matthews v. Kimball, 70 Ark., 451.)

(g- The word heir can be used synonymously with devisee. (Hascall v. Cox, 29 Mich., 435, S. C., 13 N. W., 807; 21 Cyc., 416 and 420.)

(h) Sections 1606 and 1609 Kentucky Statutes, do not set forth any additional cause of escheat than those found in section 2971, but section 2971 sets forth additional causes not found in sections 1606 and 1609.

(i) The law of escheats considered. (Hamilton v. Brown, 161 U. S., 263; Wiederanders v. State, 64 Texas, 133.)

TRABUE, DOOLAN & COX, attorneys for appellee.

J. M. DICKINSON of counsel.

POINTS AND AUTHORITIES.

1. Ky. Stats., sec. 2971, must be construed in pari materia with secs. 1606, 1609, 1610, etc., and held to cover the same cases; sec. 2971 cannot give the Louisville School Board rights enjoyed by no one else.

2. Sec. 1606—and presumptively sec. 2971 are inapplicable to forfeitures claimed under sec. 567. (Commonwealth v. Wisconsin Chair Co., 84 S. W., 535, 27 Ky. Law Rep., 170; Same v. Farmers' Bank of Ky., 84 S. W., 732, 27 Ky. Law Rep., 153.)

3. Ky. Stats., sec. 2971, provides for escheats, including defect of heirs, and cases ejusdem generis, and not for forfeitures. (Cullen v. Butler, 5 M. & S., 461; Vaughn v. Porter, 16 Vt., 266; Park Comm'rs v. DuPont, 110 Ky., distinguished.)

4. Further distinction opinion in this case being delivered by same judge as in Com. v. Wisconsin Chair Co., and Same v. Farmers' Bank of Kentucky.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR— Reversing.

More than five years before the institution of this suit the Chicago, St. Louis & New Orleans Railroad Company (the lessor by a perpetual lease to appellee Illinois Central Railroad Company) became the owner in fee of certain lots of real estate in the City of Louisville, this State. It is charged in the petition in this case that the said real estate was not necessary

or proper, and was not being used, for carrying on
the legitimate buiness as a railroad corporation by
the railroad companies named and sued, and had not
been so needed or used for more than five years
before the beginning of the suit.  The action was
instituted by the Louisville School Board, suing in the
name of the commonwealth for its behalf, to recover
the property described, as escheated property. Section
192 of the constitution of Kentucky provides: "No
corporation shall engage in business other than that
expressly authorized by its charter, or the law under
which it may have been or hereafter may be organ-
ized, nor shall it hold any real estate, except such as
may be proper and necessary for carrying on its
legitimate business, for a longer period than five
years, under penalty of escheat." Section 567, Ky.
Stats., 1903, likewise provides: "No corporation shall
engage in business other than that expressly author-
ized by its articles of incorporation or amendments
thereto; nor shall any corporation, directly or indi-
rectly, engage in or carry on in any way the business
of banking, or insurance of any kind, unless it has
become organized under the laws relating to banking
and insurance; nor shall any corporation hold or own
any real estate, except such as may be necessary and
proper for carrying on its legitimate business, for a
longer period than five years, under penalty of
escheat." Section 2971, Ky. Stats., 1903, a part of
the laws regulating the government of cities of the
first class, reads: "So much real, personal or mixed
property in the city, which, from alienage, defect of
heirs, failure of kindred, or other causes, shall escheat
to the commonwealth of Kentucky, shall vest in the
board for the use and benefit of the schools.  Said
board may, in the name of the commonwealth, for
the use and benefit of the public schools of the city,

by its president or other officer to be designated by
it, enter upon and take posession of said property,
or sue for and recover the same by an action at law
or in equity, and without office found. The board
may sell and convey any of such property by a war-
ranty deed or otherwise."

The circuit court sustained a special demurrer to
the petition, interposed by defendants, appellees, as
suggesting the plaintiffs' incapacity to maintain the
action. The petition was dismissed by the circuit
court, which rested its decision largely upon the
opinions of this court in Commonwealth v. Wisconsin
Chair Co., 27 Ky. Law Rep., 170, 84 S. W., 535, and
Commonwealth v. Farmers' Bank of Kentucky, 27
Ky. Law Rep., 153, 84 S. W., 732. Each of these
cases was brought by the escheator of Ballard county
to recover as escheated estate certain lands held by
the corporations sued, and which it was alleged were
not needed or proper for their legitimate business,
and had not been needed nor used in their
legitimate business for more than five years.
Demurrers were sustained to each petition, on
the ground that the escheator had not the
right to maintain the actions. Chapter 44, Ky.
Stats., 1903, relating to escheats. deals alone
with escheats which are worked as the failure
of heirs, or devisees, or the failure of the
owner to take possession of the land for a
certain number of years. That chapter provides for
the appointment of an escheator, and defines his
duties. It reads: "The escheator shall institute pro-
ceedings in the name of the commonwealth in the
circuit court of the county in which the land lies that
has vested in the commonwealth under the provisions
of this chapter for the recovery of same." Section
1611, Ky. Stats., 1903. That chapter does not provide

for the escheat of lands owned by a corporation for whatever cause.

In the opinions of the two cases above cited, the court was careful to restrict its decision to the single proposition that the escheator's power was limited by the statute to the recovery of lands escheated by the provisions of chapter 44, and not having authority to sue for lands escheated from any other cause, he could not maintain the actions. Those opinions may be laid out of our consideration of this case, at least until it is determined whether the Legislature has conferred the power upon the school board to maintain action to recover lands escheated to the Commonwealth under the provisions of section 192 of the Constitution. The construction of section 2971, Ky. Stats., 1903, supra, becomes necessary to a decision of the case. The contention of appellee is, and such seems to have been the view of the circuit court, that the section deals alone with escheats as anciently applied. This view results from a construction of the language used, namely, "from alienage, defect of heirs, failure of kindred, or other causes," it being asserted that the general term "or other causes" is to be construed as limited by the preceding specific terms. It is claimed in this connection that the words escheat as used in the section helps out that view of the subject because as it was employed anciently only with respect to cases where there was no known heir to take the title to lands, and inasmuch as the section deals specifically with that class of event, the general clause is reasonably and most naturally referable to other instances not enumerated of the genera specifically named.

Before examining further the rule of construction invoked by appellee, we deem it important to examine the premises upon which it is called into action.

The word "escheat" is an old one, and common in the law. It seems to have been derived from a French word, "echeoir," meaning to happen. It is also defined in its etymology to mean "to fall to; to fall to the lot of; to fall back." In feudal tenure the fief held the land of some superior on condition of rendering him services. Anciently the fee was limited to the use of the land by the vassal (Spelman, Feuds, c. 1), but this view was soon abandoned in favor of the one which now prevails; that is, that it is an estate of inheritance (2 Bl. Com., 106). But as the vassal and his heirs were not deemed to hold it upon the same condition, to-wit, that of rendering service to the lord of the manor, when the tenant died, and there were no heirs to whom the lord could look for service, the title demised to the original tenant reverted to the lord. It fell back. Hence it was described as escheat. Or, if the tenant, by reason of attainder of blood, was rendered incapable alike of holding or transmitting the title, the feud fell back into the lord's hands by a termination of the tenure, I Washb. Real Prop., 2. By a logical extension of the doctrine, when the line of inheritance failed, and the tenure was determined by any unforeseen event, the land resulted back, by a kind of reversion, to the grantor, or lord of the fee. 2 Shars. Bl. Com., 244. As in the United States there are no feudal tenures, escheats are invariably held to go to the state as the sovereign within whose jurisdiction the property may be situated, by way of reversion of the title to its source. Personal property never escheated in the original and technical sense of the term. Commonwealth v. Blanton's Ex'rs, 2 B. Mon., 393. January, 1840, the Legislature provided: "Estates within this commonwealth as to which the owner had previously died or might subsequently die intestate, without

legal heirs or distributees, should be vested in said Commonwealth without office found"—and it was held in Commonwealth v. Blanton, supra, and in White v. White, 2 Metc., 185, that personal, as well as real, estate was included. The same term and the same idea are carried forward into the existing statutes in this State. Although title to land in this State is allodial, as it is throughout the states of the Union, it seems to be the universal rule, in consonance with that of all civilized society, that, when the title lapses by reason of failure of heirs, and possibly for other reasons, it vests in the public, and is at the disposal of the government. Shars. Bl. Com., 244, 245. The reason is now probably that as no one of the public could rightfully claim it or enter upon it to the exclusion of others, and as it ought not to be suffered to lie barren, the government in behalf of all, has a better right to it than any one, although the right is also likened to and is by many supposed to rest upon the doctrines of the feud as they existed at the common law. The title to all lands within the State was formerly in the State, which had the right to declare upon what conditions it might be held, or transmitted. This is peculiarly so as to corporations holding land within the State.

In this view, we come to consider the causes upon which escheats take effect in this commonwealth. An alien may not inherit the title to lands in this State. except (1) if, not being an enemy, he has declared his intention to become a citizen of the United States according to the forms required by law; or (2) is the subject of a friendly state, and resides in this State, he may hold lands for residence or business for not exceeding 21 years; or (3) he may inherit, but may not hold the title longer than eight years. Article 3, c. 19, Ky. Stats., 1903. The section directly under

consideration therefore provides for an escheat by alienage. Estates in this commonwealth not disposed of by will of persons who have died without heirs or distributees entitled to same are the subject of escheat. Section 1606, Ky. Stats., 1903. Or if any heir or devisee fail for eight years to claim his distributive share of an estate, it shall escheat. Section 1608, Ky. Stats., 1903. The provisions of section 1609 relate more to the evidences of death and failure of heirs than to creating a distinct cause of escheat, providing that where the owner has not been heard from for seven years, and no acocunt can be had of him, or of his heirs, devisees, or distributees, he shall be presumed to have died without heirs. It seems to us that the terms "alienage," "defect of heirs," and "failure of kindred," are all comprehensive, and embrace every case of escheat allowed by the statute and enumerated above. There is no other cause of escheat called to mind, or pointed out to us, which may be likened, but not actually embraced in, the specific classes in section 2971, supra.

Are there any other causes of escheat in this State? We see that, by the organic law and by statute, it is declared that real estate owned by corporations under certain conditions shall escheat—shall fall back—to the sovereign, by whom the title was originally granted. Other causes might be provided by legislation. The provisions of section 192 of the Constitution are important, as will readily be seen upon a study of the subject, and the evil intended to be avoided, grave and clearly discernible, aside from the sufficient fact that the provision is in the Constitution, and for that reason alone never could be deemed of slight importance. In the exercise of the police power of the State, it is declared by the section to be inimical to the public

good that corporations, which may live always, and may grow ever so powerful, should be at liberty to hold any quantity of land, or engage promiscuously in business in this State; it was deemed safe and wise that they should be restricted in the first place to that business for which they were created, and in the next place that they should not be allowed to hold more land than was proper and needful in their legitimate business. Perpetual estates in land are deemed in this State to be impolitic, and are strictly prohibited. If, however, corporations might hold any quantity of land for any length of time, this important principle which regulates the holding of title to real estate in this State would be set at naught. Inattention to this restriction as to corporations would open up the widest door to a danger which has already begun to create real apprehension in some minds, and which is undoubtedly an actual danger.

It is complained that the provision of the Constitution, is a forfeiture, and not an escheat; that an escheat is the taking charge by the government of property which belongs to no one, and brings it back to a state of usefulness, while the provision being considered takes property from the owner against his will, without compensation, without regard to its value, and gives it to another and different use and public service; that the taking is a penalty for the misuse of property by the owner, in no sense an escheat. We have seen that in this country the escheating of property to the government proceeds not only upon different grounds, in some instances, but upon a somewhat different principle from the feudal escheats, and includes, in fact, additional estates to those anciently affected by the practice. If the power be conceded, as it must be in the nature of the thing, we apprehend that it is competent for

the State to make new causes of escheat, as well as to apply it to new and different character of estates, and conditions.  The Legislature may enlarge the legal meaning of a word of former limited meaning. The term "escheat" may, therefore, be properly applied to any state of case which the Constitution or legislation of the State may declare, in a just and proper exercise of the State's police power.  The question is one more of policy than of power.  This construction pursues the logic of escheating land to the lord anciently.  Given, that all title emanates from the State, that an inhibition attaches against its being held longer than five years by a corporation when not needed or employed in the business which the corporation is allowed to do, a disobedience of the law leaves the property without an owner entitled to hold it, as in that event the power to hold the title is lacking, the title falls in, as it were, as anciently it did when the tenant died without heirs, or was banished or attainted by crime.  Finding the title so, instead of leaving it forever suspended, it is made to revert to the original grantor, the commonwealth.

We have distinguished precedent for these con-clusions:  The Church of Jesus Christ of Latter Day Saints, commonly known as the "Mormon Church," was an incorporated religious and charitable society, chartered by the laws of the territory of Utah, and the preceding so-called "State of Deseret."  It was admittedly legally incorporated, with power to acquire and hold title to real estate.  It acquired some $2,000,000 worth of land.  It practiced and taught plural marriage as a religious rite and cere-mony.  In 1862 Congress, under its power to enact laws for the government of its territories, prohibited the practice of polygamy under severe penalties, and in 1867 repealed the charter of the Mormon Church,

because it persisted in such practice and teaching, and provided for the escheating of all its lands, above $50,000 worth (which remnant was to be used strictly for religious purposes), to the government of the United States for the benefit of the public schools of Utah. The act provided for an action to recover such lands to be instituted by the Attorney General of the United States in the Supreme Court of Utah. An action to escheat the lands and other estates of the church was begun in the Supreme Court of the territory, and resulted in favor of the United States. A writ of error was prosecuted to the Supreme Court of the United States, where the judgment of the Supreme Court of Utah was affirmed. In the course of the thoroughly considered opinion written by Mr. Justice Bradley for the court, it was said: "Looking at the case as the finding of facts presents it, we have before us—Congress had before it—a contumacious organization, wielding by its resources an immense power in the territory of Utah, and employing those sources and that power to constantly attempting to oppose, thwart, and subvert the legislation of Congress, and the will of the government of the United States. Under these circumstances we have no doubt of the power of Congress to do as it did. * * * It is obvious that any property of the corporation which may be adjudged to be forfeited and escheated will be subject to a more absolute control and disposition by the government than that which is not so forfeited. The nonforfeited property will be subject to such disposition only as will be required by the law of charitable uses, whilst the forfeited and escheated property, being subject to a more absolute control by the government, will admit of a greater latitude of discretion in regard to its disposition. As we have seen, however, Congress has signified its will

in this regard, having declared that the proceeds shall be applied to the use and benefit of the common schools of the territory." Mormon Church v. United States, 136 U. S., 1, 10 Sup. Ct., 792, 34 L. Ed., 481. The power of the sovereign to prohibit, even by forfeiture, the use of lands within its territory, which in the fair exercise of its police power is deemed to be baneful to the public good, does not seem to us to be open to dispute. Its power to dispose of property forfeited for that cause, which it denominates an escheat, is equally free from doubt. We thus see that the use of the term in our Constitution is not inapt, and that the act and cause are within the discretion of the State. So is the disposition of the property.

The question recurs: Did the Legislature intend by section 2971, Ky. Stats., 1903, supra, to provide for the recovery of escheats by the school boards for "other causes" than those specifically mentioned in the section? There is no perceivable reason why the Legislature should devote to public educational purposes the property escheated for the particular reasons stated in the statute, and exclude from the same use escheats from other causes. The first rule of construction is to look to the language of the act, and to give effect to every word of it if possible. Among the rules for the construction of statutes is to read general words, following specific terms, not according to their natural and usual sense, but to restrict them to persons and things of the same kind as those just enumerated. This rule is, like all rules of construction, to aid the judicial mind in arriving at what was probably in the legislative mind in using the language employed. The reason of the rule is that as it is clearly indicated that the legislator was thinking of a particular class of persons or objects, his words of more general description may not have

been intended to embrace any other than those within the class. Sutherland on Statutory Construction (section 437) lays it down that this "doctrine of ejusdem generis yields to the rule that an act should be so construed as to carry out the object sought to be accomplished by it, so far as that object can be collected from the language employed.* * * So the restriction of general words to things ejusdem generis must not be carried to such an excess as to deprive them of all meaning. The enumeration of particular things is sometimes so complete and exhaustive as to leave nothing which can be called ejusdem generis. If the particular words exhaust a whole genus, the general words must refer to some larger genus. * * * The general words are not to be rejected, and the maxim of 'ejusdem generis' must yield to the maxim that every part of a statute should be upheld and given its appropriate effect, if possible. To deny any word or phrase its known and natural meaning in any instance, the court ought to be quite sure that they are following the legislative intention." Woodworth v. State, 26 Ohio St., 196; Foster v. Blount, 18 Ala., 687.

We think the particular words used in section 2971, supra, did exhaust the genera specifically named, and, unless some other meaning be given the general words "or other causes," they would fail of any meaning. And as we have seen, the cause of escheat under investigation is another cause in addition to, and different from, those specifically named, it must be held to have been intended to be embraced by that term in the statute. The State has by this statute designated who should sue on its behalf to recover, and to what public purposes should be dedicated, escheats in cities of the first class. This obviates the trouble encountered in Commonwealth v. Wisconsin Chair

Company, supra, and Commonwealth v. Farmers' Bank of Kentucky, supra, unless the act violates that provision of the constitution which forbids special legislation. As the State might have recovered this property, upon the facts alleged and admitted by the demurrer, it was competent for the State to devote it to any public use within its discretion. The fact that the Legislature has allowed the use of escheats in cities of the first class to the public schools in such cities, and authorized the school board, a public governmental agency, to sue for and recover them is not special legislation, although the State does not allow the same privilege to the school boards of other cities. The State is not bound to govern all its cities alike, nor to give the public schools of each all the privileges it does to those of all others. In fact, it does not do so in many other particulars.

The question is not here as to the right of the State to escheat property held by a corporation, which it may have acquired by condemnation, so as to defeat the right of reversion of the former owner. It is assumed, upon the allegations of the petition, that this property is held in fee simple by appellees.

Wherefore the judgment is reversed, and cause remanded for proceedings not inconsistent herewith.