H. R. Thomas v. The State.

No. 17315.   Delivered June 28, 1935.
State's Rehearing Denied February 19, 1936.

Lattimore, J., dissents.

The opinion states the case.

*H. E. Kahn, E. T. Branch,* and *H. J. Bernard,* all of Houston, for appellant.

*K. C. Barkley,* Criminal District Attorney, and *H. G. Tigner,* Assistant Criminal District Attorney, both of Houston, *William McGraw,* Attorney General, *Vernon Coe,* Assistant Attorney General, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of keeping and being interested in keeping a certain premises, building, room, and place for the purpose of being used as a place to bet, wager, and gamble on a horse race, and his punishment was assessed at confinement in the State penitentiary for a term of two years.

The indictment, omitting the formal parts thereof, reads as follows: "H. R. Thomas, or or about the 28th day of June, A. D. 1934, in said county and State, did then and there unlawfully keep and was then and there interested in keeping a certain premises, building, room and place there situated for the purpose of being used as a place to bet, wager and gamble on a horse race and horse races and as a place where people would then and there resort to bet, wager and gamble on horse races."

The testimony adduced upon the trial shows that appellant was engaged in maintaining on the second floor of the River Oaks Building situated on Fannin street in the city of Houston in Harris county, Texas, a room and rooms where quite a number of people resorted for the purpose of betting on horse

races to be run in this State and elsewhere. The rooms were equipped with tables upon which were placed sheets of paper and upon which sheets were printed the name of the race track, the name of the horses and the name of the jockey riding each respective horse in the race that was to be run either in Texas or elsewhere. A person who entered the room, after looking over the sheets, if he desired to make a bet on any horse or horses, would walk up to a window provided for that purpose and indicate to the man behind the window the horse upon which he desired to place a bet, whereupon the person behind the window would issue to the person making the bet, after receiving the amount of money desired to be bet, a ticket with the number and name of the horse and the amount of money bet written on the ticket. At the conclusion of the race the names of the winning horses were announced and those holding tickets with the named winner thereon would go to a window provided therefor and cash their tickets.

The appellant's contention is that the indictment does not charge the offense contemplated under article 625, P. C., which is a felony and under which article the prosecution proceeded, but that if he is guilty of any offense he is guilty of offending against article 649, P. C., which is a misdemeanor, and therefore the district court did not have jurisdiction of the subject-matter. In order to arrive at a correct solution of the question, we must look to all the preceding and succeeding articles of the statute relating to gaming.

Article 615 of chapter 6, P. C., relates to betting at any game of cards.

Article 616, P. C., relates to betting on a game of dominoes.

Article 618, P. C., relates to betting on a game played with dice.

Any person offending against either of said articles of the statute is guilty of a misdemeanor.

Article 625 of said chapter of the Penal Code, under which appellant was convicted, reads as follows: "If any person shall keep, or be in any manner interested in keeping any premises, building, room or place for the purpose of being used as a place to bet or wager, or to gamble with cards, dice or dominoes, or to keep or to exhibit for the purpose of gaming, any bank, table, alley, machine, wheel or device whatsoever, or as a place where people resort to gamble, bet or wager upon anything whatever, he shall be confined in the penitentiary not less than two nor more than four years, regardless of whether any of the above mentioned games, tables, banks, alleys,

machines, wheels, or devices, or things are licensed by law or not. Any place or device shall be considered as used for gaming or to gamble with or for betting or wagering, if any money or anything of value is bet thereon, or if the same is resorted to for the purpose of gaming or betting."

Article 647, P. C., reads as follows: "No person, or any agent of any association of persons or any corporation, shall at any place in this State, engage or assist in pool selling or bookmaking on any horse race or by means of any pool selling or bookmaking, take or accept any bet or aid any other person in betting or taking or accepting any bet upon any horse race to be run, trotted or paced in this State."

Article 648, P. C., reads as follows: "No person or any agent of any association of persons or corporation, at any place in this State, by pool selling or bookmaking or by means of telegraph, telephone or otherwise, shall aid or assist any other person in wagering, betting or placing a bet or in offering to wager, bet or place a bet of anything of value on any horse race to be run, trotted, or paced at any place in this State or elsewhere."

Article 649, P. C., reads as follows: "No owner, agent or lessee of any property in this State shall permit the same to be used as a place for selling pools or bookmaking or wagering or receiving or assisting any person in placing any bet or in receiving or transmitting any offer to bet anything of value on any horse race to be run, trotted or paced at any place in this State or elsewhere."

Article 650, P. C., reads as follows: "Whoever violates any provision of the three preceding articles shall be fined not less than two hundred nor more than five hundred dollars, and be imprisoned in jail not less than thirty nor more than ninety days."

Article 625, supra, is a general statute, while article 647, 648, 649, and 650, supra, are special statutes relating to horse races and the betting on horse races, etc., just as article 646, P. C., is a special statute relating to betting on football and baseball games, and article 643, P. C., relating to betting on elections. If appellant, under the facts in this case, could be prosecuted and convicted under article 625, supra, then any person who provided a building, room, or place where people might resort to bet or wager on football, baseball, or the result of an election could also be prosecuted under said article, although horse racing, football, baseball, or betting on elections is not mentioned or referred to therein. If the Legislature had

intended to include the offense of betting on horse races, book-making, or pool selling in the general statute, article 625, supra, it could have said so and obviated the enactment of special statutes on the subject. Where two or more articles of a statute are apparently in conflict with each other, they should be so construed as to give effect to each and all, if possible, and where there is a general statute and also a special statute embracing the same or similar subject-matter, the special statute will control. A matter not included within a penal statute should not by judicial construction be read into it because in so doing the judiciary would usurp the functions of the Legislature. The legislative intent should be ascertained from the words of the act itself. To gamble with cards, dice, or dominoes is a misdemeanor under article 615, 616, and 618, supra, unless the same is done on premises or in a building or room kept for that purpose. Inasmuch as article 625, supra, specifically mentions the games and things which are therein prohibited, it occurs to us that the legislature did not intend to include therein betting on horse races, football, and baseball games, bookmaking, or pool selling. If the State's contention were correct, then there would be a conflict between Articles 627, P. C., and 649, supra, but if we give effect to all of the acts pertaining to gaming, which can be done without nullifying any, then it follows that the general statute must yield to the special statute, and the offense of which the appellant stands charged is but a misdemeanor of which the district court did not have jurisdiction. See article 5, P. C.

The words "or as a place where people resort to gamble, bet or wager upon anything whatever" (article 625) is but a cleaning up clause in the construction of which the rule ejusdem generis must be resorted to, and when we apply that rule we find that it refers to and means acts of like or similar nature as those specifically mentioned in said article. It does not seem reasonable that any one will seriously contend that horse racing, bookmaking or pool selling are similar in nature as gambling on cards, dice, or dominoes. We believe that what we have said here is supported by the opinion of this court in the case of Ex parte Roquemore 60 Texas Crim. Rep., 282, 131 S. W., 1101, 32 L. R. A. (N. S.) 1186, and authorities there referred to.

It seems that it was the intention of the Legislature to prohibit the operation and maintenance of a place where those games are engaged in which at the time article 625, supra, was

enacted were most commonly and usually resorted to for gambling in rooms and houses, and not horse races and football or baseball games.

Having reached the conclusion that appellant's contention should be sustained, the judgment of the trial court is reversed, and the cause remanded.

*Reversed and remanded.*

MORROW, PRESIDING JUDGE; HAWKINS, JUDGE.—The foregoing opinion was prepared by Judge KRUEGER of the Commission of Appeals for the Court of Criminal Appeals. Believing he has reached a correct conclusion regarding the question presented, his opinion is adopted and approved as the opinion of the court, with the following additional observations.

Article 625, P. C. (formerly article 559), was enacted in 1907, and carried forward under its present number in the revision of 1925. Two years after Article 625 was enacted the Legislature enacted several articles which were carried forward in the 1925 revisions as Articles 647, 648, 649, 650 and 651, by which one was penalized who engaged in pool selling, or assisting in pool selling, or bookmaking on horse races. Violations of these statutes were made misdemeanors, and were not offenses when Art. 625 was enacted, and did not become so until 1909; therefore, could not have been in contemplation when Art. 625 was enacted. Apparently from the legislation in this State bearing upon the subject in hand, a distinction is made between the penalties for facilitating bets and gambling on horse races, and facilitating betting and gambling on other things. Whether the distinction is wise or not does not so much concern us, for the legislature may correct any defect that may appear to it necessary. This court cannot exercise legislative functions. In our opinion the prosecution should have been under one of the statutes forbidding facilitating bets on horse races, namely, Arts. 647 to 651 P. C., and the present prosecution under Art. 625 can not be upheld.

### DISSENTING OPINION.

LATTIMORE, JUDGE.—My Brethren have signified approval of an opinion reversing the conviction of this appellant for keeping a gambling house, the error of which opinion seems to the writer to be clear and plain. I regret dissent,—but the vice of gambling is so ruinous and the denun-

ciations of same so plain in all our common law and statutory utterances, and the mistake of this reversal so serious, that I am impelled to write my views at length.

In 1907 our Legislature, stirred by the murder of a great county attorney at Fort Worth while raiding a gambling house, enacted Art. 625, P. C., aimed at the evil of keeping of gambling houses,—and made same a felony. Said article stands today as when enacted. It makes a felon of him who keeps and is interested in keeping a gambling house, the offense of which this appellant was convicted.

In 1909 the Legislature enacted Arts. 647-48-49, P. C., the last named of which is the only one pertinent to this discussion, evidently without intent to change the law with reference to the felonious offense of keeping gambling houses. Nothing in Arts. 647 and 648, P. C., have reference to punishment of the person who owns or leases or is interested in the building. Art. 649 forbids any owner, agent or lessee of property in this State to permit same to be used as a place for selling pools or book-making, or assisting any person in placing any bet on horse races in this State or elsewhere. It is apparent to even a casual observer that none of the three last named articles punishes, or was intended to punish him whose offense is keeping,—or in common language, who runs a gambling house, even though the form of gambling indulged in or offered was some form of betting on horse races,—unless such keeper was also the owner, lessee, or agent of such place. Manifestly the keeper or man who runs such house is the key man in the whole guilty structure. The owner, lessee, or agent of such place might easily be hard to identify or connect with same, especially when shrewdly drawn documents relating thereto furnish smoke-screens. In any event this court can not assume that in making it a misdemeanor to bet on or to own a house where people were permitted to bet on horse races in 1909, the Legislature intended to circumscribe or lessen the scope of Art. 625, P. C., whose whole effect and purpose was directed at the keeper of any gambling house, no matter how or in what manner the gambling be done, which makes such place a gambling house. The fact that the betting at horse races, book-making, and assisting in placing bets, etc., were made misdemeanors by said Arts. 647-8-9, and that betting at football, baseball and elections, as appears in Arts. 643 and 646, P. C., are misdemeanors, argues nothing pertinent. Betting on dice, dominoes, cards, etc., were all misdemeanors when Art.

625, supra, was enacted and still are, but no one could argue that such fact in any way militated against either the purpose or power of the Legislature in making it a felony to keep a house for the purpose of being used as a place in which such misdemeanor gambling was carried on. The indictment in this case is set out in the opinion approved by the majority. Note the language:

"H. R. Thomas * * * did then and there unlawfully keep and was then and there interested in keeping a certain * * * room * * * there situated for the purpose of being used as a place to bet, wager and gamble on * * * horse races." In the opinion it is said: "The appellant's contention is that the indictment does not charge the offense contemplated under Art. 625, P. C.," and the opinion concludes with the statement that the contention must be sustained.

Unless there be some sanctity about betting on horse racing,—and there is and can be none, or unless there be something in Arts. 647-8-9, P. C., which as a later enactment,— would repeal or prevent application of Art. 625, P. C., to the acts and offense of this appellant as shown in this record,— then the indictment is good and the conviction should be upheld. No one can read Arts. 647-8-9, P. C., and find therein where the keeper of the house where the gaming is carried on, can be prosecuted therefor unless he be the owner, agent or lessee, which in ninety-nine cases out of a hundred the keeper is not. This appellant is not charged as owner, lessee, or agent of said building. If such was the charge, he might have some standing here upon which to base a claim that there was some similarity between the offense charged in Art. 649, P. C., and those denounced in Arts. 626-7, P. C., which were enacted in 1907, at the same time as Art. 625, P. C., but plainly were intended in nowise to conflict with the offense penalized by said Art. 625, supra. In other words, while there might be some ground for claim of conflict because of like characteristics between the offenses referred to in Arts. 626-7, P. C., and Art. 649, P. C., there is not the slightest ground for holding Art. 625, P. C., repealed or superseded because of conflict with Art. 649. Nothing in Art. 649, P. C., covers the offense of which this appellant has been found guilty. He is plainly guilty of the offense denounced in Art. 625, P. C., and I cannot bring myself to believe that this court intends to construe or interpret out of existence a plain statute covering a plain violation of the law,—by any course of reasoning. It is

difficult for me to understand that this court intends to say; as seems the plain import of its opinion, that if a gambling house was shown to be run for the purpose of gaming on football games, or baseball games, or elections, that the man who kept or ran such gambling house could not be prosecuted under Art. 625, simply because these were not specifically named in Art. 625, supra. The opinion states: "If the Legislature had intended to include the offense of betting on horse races, bookmaking, or pool selling in the general statute, Art. 625, supra, it could have said so." An easy reply would be that it did not name these because at that time there was no statute against betting on horse races, football games or baseball games.

Plainly the Legislature intended that the man who runs the gambling house, that is, the keeper thereof, no matter what the name or description of the gaming there carried on, should be held guilty of a felony. Said Art. 625, P. C., is copied in our original opinion, and its provisions are both comprehensive and definite. While betting on a horse race was not an offense when Art. 625 was enacted, it is completely comprehended in the language of said article; and the same is true of any room or place kept as a place where persons resort for the purpose of any kind of gambling. Note the language used: "Any place * * * shall be considered as used for gaming * * * if same is resorted to for the purpose of gaming or betting." Nor does the article say, only when the games named or described are bet upon, but says "As a place where people resort to gamble, bet or wager upon anything whatever." We are holding in the majority opinion that a man, not the owner, agent or lessee, who are the persons named in Art. 649, P. C., and the only ones,—can not be held guilty of a violation of the terms of Art. 625, P. C., notwithstanding the facts show him to be the absolute keeper of the gambling house,—the reason for our holding being that the offenses were not in existence at the time Art. 625 was enacted and were not named in said article. We are in effect holding that he can not be held guilty even after he is clearly shown not to be the owner, agent or lessee of the gambling house which he was running. He had subagents or employees who made the actual contact with the people placing the bets, and not being able to show him the owner, agent or lessee, the presumption is that he will go scot free upon reversal of this case.

I can not understand how this man would have been guilty

of a felony if the gambling done in the place ran by him had been upon cards, dice or dominoes, and the prosecution had under Art. 625, supra, but now is to be held not guilty of anything because the gambling was on horse racing.

Appellant lays much stress in his brief upon the proposition that betting on horse racing is a different offense and of different kind, nature and quality from any of those named in Art. 625, P. C., and that under the rule of ejusdem generis he can not be held guilty.

Appellant insists that said article 625 having named specifically certain games and devices, the proper construction of the phrase "Or as a place where people resort to gamble, bet or wager upon anything whatever," should be held under the rule of construction known as ejusdem generis to mean only "upon any like or similar thing," in which event and under which construction appellant says he could not properly be proceeded against under said article, because a horse race is not like cards, dice or dominoes, or any of the other devices mentioned specifically in the first part of said article. The propriety of this construction is also urged in the brief in view of the fact that the articles mentioned, which relate to betting on horse races and prohibited the use of property as a place to sell pools, etc., are later statutes in point of enactment than Art. 625, supra, and all three of said last enacted articles are aimed at punishing the better at a horse race and him who aids and assists in making such bet, and him who permits his property to be used as a place for selling pools, or betting or assisting in betting on horse races, to each and all of which offenses are fixed misdemeanor penalties.

The rule of construction above referred to is sound, if properly applied, and is of ancient and respected lineage. It was born of the common law and with more or less strictness has been invoked in cases altogether too numerous to mention, much less to discuss; but after all, as is said in many cases, it is but a rule of construction invoked only when the intent of the words used in a statute, contract, document, etc., be not clear from the language,—but such rule should never be used to defeat the legislative intent if same be clearly ascertainable from the words used when taken in their ordinary meaning. State v. Grosvenor, 149 Tenn., 158, 258 S. W., 140; Phelps v. Commonwealth, 209 Ky., 318, 272 S. W., 743; State v. Western Union Tel. Co., 196 Ala., 570, 72 So., 99; Brooklyn v. Kings Co. Trust Co., 212 N. Y. St., 343; Stratford Co. v. Continental

Mortg. Co., 74 Cal. App., 551, 241 Pac., 431; Cades v. Mosberger Lbr. Co. (Mo.), 291 S. W., 178; Dillard v. State, 104 Neb., 209, 175 N. W., 668; Children's Bootery et al. v. Sutker (Fla.), 107 So., 345, 44 A. L. R., 698; Nephi Plaster Mfg. Co. v. Juab Co., 33 Utah, 114, 93 Pac., 53, 14 L. R. A. (N. S.), 1043. Another well established holding is that the rule referred to has no application and does not control where it appears from the language used, as a whole, that there was no intent by the use of general terms to limit their application to the kind, species, etc., set forth and enumerated in specific terms preceding such words of general application. State v. Eckhardt, 232 Mo., 49, 133 S. W., 321; Wiggins v. State, 172 Ind., 78, 87 N. E., 718; Miller v. State, 121 Ind., 294; Commonwealth v. Chicago, etc. Ry. Co., 124 Ky., 497, 99 S. W., 596; Williams v. Williams, 18 Tenn., 20; State v. Broderick, 7 Mo. App., 19. There is still another line of decisions appliable, especially to the matter before us, from some of which we quote. In State v. Eckhardt, 232 Mo., 49, it is said:

"The doctrine of 'ejusdem generis,' however is only a rule of construction to be applied as an aid in ascertaining the legislative intent, and does not control where it clearly appears from the statute as a whole that no such limitation was intended. Nor does the doctrine apply where the specific words of a statute signify subjects greatly different from another; nor where the specific words embrace all objects of their class, so that the general words must bear a different meaning from the specific words or be meaningless."

Also as said in U. S. Cement Co. v. Cooper, 172 Ind., 599, 88 N. E., 69:

"The rule should not be arbitrarily applied to limit the meaning of general words, nor should it be applied when the specific words embrace all objects of their class, so that general words must bear a meaning different from the specific words or be meaningless, thus violating the rule that all the words of a statute must be given effect, if possible."

Again we find in Drainage Com. v. National Contracting Co., 136 Fed., 780, 139 U. S., 628:

"The rule 'ejusdem generis' involves the idea that the particular governs the general, and is a mere auxiliary and subordinate formula, intended to assist in the application of the basic rule that the intent of the parties governs, as neither in law nor in ordinary logic can there be any inflexible rule by which parties are arbitrarily held to forego a general requirement merely because they also state a particular one."

Again in Strage v. Board of Com'rs., 173 Ind., 640, we find the following:

"The rule of ejusdem generis is not in and of itself a rule of interpretation, but an aid to interpretation when the intention is not otherwise apparent. * * * The rule of ejusdem generis does not apply when the prior or specific words exhaust the class, for there is nothing of the remaining terms to qualify, and, following the rule that all parts of a statute shall, if possible, be given effect, the general words are to be given effect, if that can be done, and that the rule shall not be invoked to restrict the operation of the act within narrower limits than the Legislature intended."

The Supreme Court of Kentucky, in Com. v. Ry. Co., 124 Ky., 497, said:

"So the restriction of general words to things ejusdem generis must not be carried to such an excess as to deprive them of all meaning. The enumeration of particular things is sometimes so complete and exhaustive as to leave nothing which can be called ejusdem generis. If the particular words exhaust a whole genus, the general words must refer to some larger genus. The general words are not to be rejected, and the maxim of ejusdem generis must yield to the maxim that every part of a statute should be upheld and given its appropriate effect if possible."

In order that our purpose in what we have just said and quoted may be made clear, we refer to the quoted part of Art. 625, supra: " * * * as a place to bet or wager, or to gamble with cards, dice or dominoes, or to keep or to exhibit for the purpose of gaming, any bank, table, alley, machine, wheel *or device whatsoever.*" In this enumeration of particular things forbidden, what is left of the same kind? Cards are not like dice, and dominoes differ widely from both, and the three practically exhaust the list of gambling games which do not call for specially made tables. After enumerating the tables, banks, alleys, etc., this list concludes with its own omnium-gatherum by saying "Or device whatsoever." What like game, table or device used for gaming could any one claim is left out of this enumeration. All of like kind belonging in this class are either named or else caught up in the net of "Any device whatsoever." It is plain that when the law-makers then proceed to add to the above,—"Or as a place where people resort to gamble, bet or wager upon *anything whatever,*" they were not intending thereby to refer to any genus or species of games

or devices such as had been enumerated or included, but intended, as far as they could, to reach out and include *any kind of betting or wagering* or exhibiting, in short,—to stop gambling places where people resorted to bet or wager upon anything whatever. The whole article reeks with proof of this comprehensive intention. Same goes on to say "Regardless of whether any of the above mentioned games, tables, banks, alleys, machines, wheels or devices, or *things,* are licensed by law or not." Nor does the statute stop here, but further says: "Any place or device shall be considered as used for gaming or to gamble with, or for betting or wagering, if any money or anything of value is bet thereon, or if the same is resorted to for the purpose of gaming or betting." How completely are the words of the opinion in Com. v. Ry. Co., 124 Ky., 497, above quoted, met and applied by the words used in this statute. The enumeration of particulars therein is so exhaustive as to leave nothing which could be called ejusdem generis, and the particular words used having exhausted the genus and species, the general words following must refer us to a larger class or species. To attempt to explain the meaning of the phrase "Or as a place where people resort to gamble, bet or wager upon anything whatever," upon the theory of ejusdem generis, is not only to ignore the stronger and better rule which is written into Arts. 7 and 8 of our Penal Code, which demand that every article of this code be construed according to the plain import of the language in which it is written, and that the words of this code, unless specially defined, shall be taken and construed in the sense in which they are used in common language, taking into consideration the context and subject matter, but is also to forget and leave out the well grounded rule which is more demanding than that of ejusdem generis,—which is that every part of a statute must be upheld and its language given appropriate effect, if at all possible. As said in U. S. Cement Co. v. Cooper, 172 Ind., 599, the rule of ejusdem generis is but one of a number of rules of construction intended to aid in finding the true meaning of a statute, etc., and where, considering the act as a whole, the evil to be remedied, and public sentiment at the time of its passage, the purpose of the act clearly appears,—the rule should not be arbitrarily applied to limit the meaning of general words, nor should it be applied when the specific words used embrace all objects of their class, so that the general words must bear a meaning different from the specific words, or else be meaningless, and would be in

violation of the rule that all words of a statute must be given effect if possible. This is almost the exact conclusion reached by the Supreme Court of Missouri, as appears in the quotation from State v. Eckhardt, 232 Mo., 49, supra.

Giving effect to these well settled conclusions, and also to what seems the purpose and language of Art. 625, supra, I am not able to hold that said article does not embrace the offense made by the facts in this case, but believe on the contrary that it does so embrace it, and that such was the intent of our lawmakers.

Nor do I find anything upon closest scrutiny of Arts. 647-8-9, P. C., evincing a purpose on the part of our Legislature to take out of the operation of said Art. 625, supra,—the offense of keeping and being interested in keeping a place to be used as a place to which people resort for the purpose of betting and wagering,—when the thing to be bet upon and wagered about is a horse race.

The man who permits his property to be used as a place to gamble is likely as bad as the keeper of the house, and his punishment is fixed at the same number of years in the penitentiary under our law, but the offenses are in principle and elements different.

I have read with interest the able brief of appellant and each authority cited and discussed therein, and many others. I most heartily agree with every word of the able opinion of Judge White in Murray v. State, 21 Texas Crim. App., 620. Nor do I disagree with what is said in Ex parte Roquemore, 60 Texas Crim. Rep., 282, in which this court held the game of baseball not ejusdem generis with those amusements forbidden by what we commonly call the Sunday Laws, but I have to admit my inability to make application of what is there said to what is found in the case before us.

Having carefully considered the various contentions made by appellant in this case, and not being able to agree with him, nor with the majority opinion, I respectfully record my dissent.

### ON MOTION FOR REHEARING

HAWKINS, JUDGE.—The State has filed a vigorous motion for rehearing contending that we erred in our original opinion in holding that if appellant had offended against any law it was not that defined by Article 625 of the Penal Code. In Dolan v. Walker, 121 Texas, 361, 49 S. W. (2d) 695, 697, the Supreme Court of this State has restated a long accepted prin-

ciple, as follows: "The paramount rule in construing statutes is to ascertain and give effect to the intention of the Legislature." This rule seems peculiarly applicable where it is questionable whether certain acts complained of come within the denunciation of a criminal statute.

In an effort to arrive at the intention of the Legislature as expressed in said article 625, it is necessary to consider in connection therewith articles 626, 627, 647, 648, 649, 650, and 651 of the Penal Code, and also the history of the legislation reflected by said enactments.

As passed by the 30th Legislature (Acts 1907, p. 108) the article which is now 625 did not appear in its present form. It was enacted as article 388b, and was carried forward in the 1911 revision of the Penal Code as article 559, and read as follows, both in the original act and in said revision. "If any person shall rent to another or shall keep or be in any manner interested in keeping, any premises, building, room or place for the purpose of being used as a place to bet or wager, or to gamble with cards, dice, dominoes or to keep or exhibit for the purpose of gaming, any bank, table, alley, machine, wheel or device whatsoever, or as a place where people resort to gamble, bet or wager upon anything whatever or shall knowingly permit property or premises of which he is owner, or which is under his control to be so used, shall be guilty of a felony and upon conviction shall be punished by confinement in the penitentiary not less than two nor more than four years, regardless of whether any of the above mentioned games, tables, banks, alleys, machines, wheels or devices, or things are licensed by law or not, and any place or device shall be considered as used for gaming or to gamble with or for betting or wagering, if any fees, money, or anything of value is bet thereon, or if the same is resorted to for the purpose of gaming or betting."

It will be noted that the "renting" of premises for the purposes mentioned in said article, or "permitting the use" of premises for such purposes was included in the same article, but by the revision of 1925, old article 559 was "split up" and the "renting of premises" now appears as article 626 and "permitting the use" of premises appears now as article 627. In 1903 (Act of the 28th Legislature, c. 50, p. 68) it was made a misdemeanor to engage in, or assist in selling or buying pools or bookmaking or betting on horse races; likewise it was made a misdemeanor for an owner or a lessee to permit his premises "to be used as a place" for selling pools, bookmaking

or betting on horse races. In 1905 (Act of the 29th Legislature, c. 165, p. 398), the Act of the 28th Legislature was amended, and it was expressly provided that pool selling, bookmaking and betting on horse races and permitting premises to be used for such purposes, were not offenses if they occured "on the day and within the enclosure where such race" was run. Such was the status of the law when what are now articles 625, 626, and 627 were enacted in 1907. Yet, the Legislature, with knowledge that the act of 1905 expressly permitted the things mentioned and which the State now seeks to bring under present article 625, enacted said law without any reference to the act of 1905. It seems to follow that the Legislature had no intention at the time to include under articles 625, 626, and 627 the selling of pools, bookmaking, betting on horse races, or permitting premises to be used for such purpose. If, as contended by the State, such acts were intended to be included in the denunciation of said articles, it seems strange and unreasonable that the Legislature would have entirely ignored their act of two years before, and say, in effect, that we now propose to send one to the penitentiary for doing things which we expressly said two years ago were not offenses of any character, without any mention of said former permissive act. In 1909 (Acts 31st Legislature, c. 45, p. 90) the Legislature again dealt with horse racing, betting and selling pools thereon, bookmaking and permitting premises to be used for such purpose. The Act of the Twenty-Ninth Legislature in regard to such matters was expressly repealed and there was enacted in lieu thereof what is now found in the revision of the Penal Code of 1925 as articles 647, 648, 649, 650, and 651. Once again the Legislature entirely ignored articles 625, 626, and 627, as having any relation to the subject of horse racing or the things heretofore mentioned in connection therewith. The offenses defined in articles 647 to 651, inclusive, were made misdemeanors and the punishment prescribed was by fine, or by fine and imprisonment in jail. By construction, the State seeks to bring the acts which appellant is alleged to have committed under article 625 by the language "or as a place where people resort to gamble, bet or wager upon anything whatever." In determining whether the Legislature ever intended any such construction, it is pertinent to take note of the following fact: By the language of the law as originally enacted in 1907, and as now embraced in articles 625 and 627, any one who knowingly permits property or premises of which

he is owner, or which is under his control, to be used for any purpose mentioned in article 625 is guilty of a felony carrying a punishment of not less than two nor more than four years in the penitentiary. If article 625 and 627 be construed as the State contends, then the owner or any one controlling property or premises who permits it to be used as a place to bet and gamble on a horse race, or to sell pools or make books thereon, would be guilty of a felony; yet, under such construction, we find the Legislature doing the futile and foolish thing of enacting a law in 1909 (article 649, P. C.), which provides as follows: "No owner, agent or lessee of any property in this State shall permit the same to be used as a place for selling pools or bookmaking or wagering or receiving or assisting any person in placing any bet or in receiving or transmitting any offer to bet anything of value on any horse race to be run, trotted or paced at any place in this State or elsewhere." A penalty for the violation thereof is fixed at a fine and imprisonment in jail. Thus, by the State's contention, the same act in one instance is denounced as a felony and in another as a misdemeanor, with different penalties, thereby rendering both legislative acts nugatory and unenforceable. We mention this as another reason for concluding that the Legislature never intended that the acts which are charged against appellant should be covered by article 625.

As further tending to demonstrate that the Legislature had no intention to include under article 625 the acts charged against appellant, we note that in 1933 (Acts 43d Legislature, 1933, p. 428, c. 166, as amended First C. S., 43d Leg., 1933, p. 32, c. 10, a law was passed permitting horse racing and betting thereon under what was called the "certificate system," permitting one holding a license provided for in said act to collect and receive contributions of money from any person present at such race for the purposes enumerated in said act. The Legislature having in mind the articles of the Penal Code relative to horse racing, and fearful of an attempted enforcement thereof, provided as follows: "The said certificate system as herein authorized shall not be construed to be either pool selling, betting or bookmaking within the meaning of Articles 645, 647 and 648 of the Penal Code of the State of Texas, Title 2, Chapter 6, according to the 1925 revision." Vernon's Ann. P. C., art. 655a, subsec. 2. Again, the Legislature ignored entirely and made no reference to article 625. This would seem to indicate that it had no

apprehension that an effort might be made to bring under said article the things authorized by the act of 1933, which apprehension did exist as to the articles mentioned.

The Attorney General of this State has filed a brief in the present case. If we do not misapprehend it, he does not differ from us in the conclusion reached in our original opinion, but questions whether in applying the rule of "ejusdem generis" in construing article 625 the restriction placed thereon is not greater than was necessary or proper. The rule was employed in attempting to ascertain the legislative intent with regard to the particular offense charged against appellant. Construing said article in connection with the other legislation which has been referred to, we think proper application was made of the rule. If the offense of keeping a place for the purpose of betting on a horse race, bookmaking and pool selling thereon were of the same character as the things mentioned in article 625, then we would agree with the Attorney General that the rule of "ejusdem generis" need not be invoked; but there is such great difference in the character of the games and gambling devices mentioned in article 625 and horse races, bookmaking, and pool selling that in order to sustain the State's contention this court would, in our opinion, be by judicial construction reading into the statutes that which the Legislature did not see proper to include therein.

Having reached the conclusion that the original disposition made of this case is correct, the motion for rehearing is in all things overruled.

### DISSENTING OPINION ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In their opinion overruling the State's motion for rehearing my Brethren seem to try to support their original conclusions deemed by me to be wholly erroneous and unwarranted, by a recital of the legislative history involving our present laws on gaming, and especially that feature of same connected with betting on horse races, book-making, etc., and they call attention to the fact that the 1905 Legislature,—two years before they passed the sweeping and comprehensive act, a part of which is Art. 625, P. C., and under which this prosecution is had,—enacted a law providing that book-making, pool-selling and betting on horse races should be forbidden and made penal only "except on the day and within the enclosure where such race is run; also that in 1907 when Art. 625 was enacted, the act containing

same made no reference to the above mentioned act of 1905, from which fact my Brethren infer that the act of 1907 was not intended to include, or,—as here applied,—make a felon of him who kept a house for the purpose of being used as a place to bet and wager on a horse race, as is here charged.

I do not find a word in the 1905 act which protects, directly or indirectly, the man whose offense in keeping and being interested in keeping a certain house or building for the purpose of being used as a place to bet, wager and gamble on a horse race. I might observe that the 1905 law was unenforceable and obnoxious to our Constitution because the caption of the act wholly failed to set out what the purported amendments were to be. The only legal amendments to the prior act, referred to in said caption, related to horse racing and betting on same on Sunday. If any attempt was ever made to carry said 1905 act into execution, I am not aware of it, and same was expressly repealed in 1909 when the old law was substantially reenacted. I might further observe that the aim, purpose and intent of the act of 1907, as applicable here, was to penalize the keeper of a gambling house,—and this wholly without regard to whether he owned or had leased the house or premises involved. Argument would seem unnecessary to make plain that as horse racing was conducted in this State thirty years ago, at State and county fairs, etc., that the permissive language of the 1905 act as follows: "Except on the day and within the enclosure where such race is run," would clearly make impossible, or at least impracticable the keeping of such a house or premises as a place for the purpose of being used as a place to bet, wager and gamble on horse races. It might not be impossible for a house to be kept as a place to be used for such purpose when its existence and continuance was limited to one day and one enclosure, but to the writer it seems a far cry to cite this act as a reason why the Legislature in 1907, in enacting Chapter 49, Acts Regular Session, should be held to not include a house and place kept for the purpose of being used as a place to bet on horse races, when the plain, simple English words used expressly include him who keeps such house or place for the purpose of being used as a place to bet "On anything whatever."

The exact language of the caption of said act of 1907 is as follows: "Making it a felony punishable by confinement in the penitentiary for any person directly, through an agent, or as agent for another to keep any house or place to gamble with cards, dice, dominoes or upon anything whatever;" and the

language of Art 388b (now Art. 625 P. C.) of said act makes a felon of him who keeps or is interested in keeping any building, room or place for the purpose of being used as a place to bet or wager, or to gamble with cards, etc., or as a place where people resort to gamble, bet or wager upon anything whatever, * * * regardless of whether such games * * * or *things* are licensed by law or not,—and any place * * * shall be considered as used for gaming * * * or for betting or wagering, if any money or anything of value is bet thereon.

My Brethren in their opinion say:

"Such was the status of the law when what are now Arts. 625, 627 and 628 were enacted in 1907. Yet, the Legislature, with knowledge that the act of 1905 expressly permitted the things mentioned and which the State now seeks to bring under present Art. 625, enacted said law without any reference to the act of 1905. It seems to follow that the Legislature had no intention at the time to include under Arts. 625, 626 and 627 the selling of pools, book-making, betting on horse races, or permitting premises to be used for such purpose."

They are in error. The 1905 Act did not expressly permit the keeping of any house or place to be kept or used anywhere for the purpose of being used as a place to bet or wager on horse races, and if the Act had been constitutional its attempted enforcement would not embrace, nor could it be construed to have reference to, such a place as was kept by this appellant as shown by this record, and the argument OFFERED IN THE OPINION, based on the 1905 Act, seems to the writer to wholly fall to the ground. There are other things contained in the opinion that seem to me to add nothing to its legal sufficience.

I make these observations in addition to those in my former dissenting opinion. I recognize that a dissenting opinion is no more than an expression of the views of its writer.

I respectfully again record my dissent.